UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

FERNANDO BERMUDEZ,

                             Plaintiff,

              -against-

THE CITY OF NEW YORK, et al.,

                        Defendants.

------------------------------------------------------------------------X

**RESPONSIVE STATEMENT TO DEFENDANTS' STATEMENT PURSUANT TO RULE 56.1**

11 Civ. 750 (LAP)

**PLAINTIFF BERMUDEZ'S RESPONSIVE STATEMENT TO DEFENDANTS' STATEMENT OF FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

       Plaintiff, FERNANDO BERMUDEZ, submits the following as and for his Responsive Statement of Facts pursuant to Local Civil Rule 56.1:

1.   Admitted for the purposes of this motion.

2.   Admitted for the purposes of this motion.

3.   Admitted for the purposes of this motion.

4.   Denied.  Plaintiff objects to this statement of fact as contrary to the evidence before the Court, because it inaccurately characterizes the testimony upon which is relies, because it is a compound statement of fact, and because the use of the phrase "its immediate aftermath" is vague and ambiguous.  Ms. Velazquez, Mr. Kent and Mr. Iyesi did not see who was fighting and did not see Blount punch Lopez in the eye.  Defs.' Exh. F at 20-24; Defs.' Exh. G at 17-20; Defs.' Exh. H at 120:6-121:1.

1

5.   Denied.   Iyesi only glanced at the man with the white t-shirt and was not paying attention to him.  Exh. 3 [Okpa Iyesi Trial Testimony ("Iyesi T.T.") at 138:13-15, 139:2-3, 181:16-21, 182:19-22, 183:5-7.

6.   Admitted for the purposes of this motion.

7.   Admitted for the purposes of this motion.

8.   Admitted for the purposes of this motion.

9.   Denied.  Velazquez never testified to making such a remark to Thompson.  In fact, after observing the individual with her ex-boyfriend Angelo Maysonet, Velazquez did not see the man again until after they were outside the club hours later.  Exh. 1 [Jamie Velazquez Trial Testimony ("Velazquez T.T.")] at 263:21-25, 327:19-25, 329:6-24, 333:25-334:6.

10. Denied.  Lopez knew the individual by both his given name Luis "Lou" Munoz, as well as his street name "Wool Lou."  Exh. 4 [Efrain Lopez Videotape Transcript ("Lopez V.T.")] at 20:3-9; Exh. 5 [Affidavit of Efrain Lopez dated 05/03/13 ("Lopez 2013 Affidavit"] at ¶ 5.

11. Denied.  Lopez's interactions with Luis "Lou" Munoz, a.k.a. "Wool Lou" far exceeded occasional neighborhood sightings.  Lopez had lived with Luis "Lou" Munoz, a.k.a. "Wool Lou" and his family for a period of time prior to the murder of Raymond Blount and had been with Luis "Lou" Munoz, a.k.a "Wool Lou" in the park near his grandmother's house at approximately 6:00pm on the night of the murder.  Exh. 6 [Affidavit of Elizabeth Munoz dated 05/21/93]; Exh. 5 at ¶ 5; Exh. 4 at 22:21-23:13.

12. Admitted for the purposes of this motion except that Lopez described Luis "Lou"

2

Munoz, a.k.a. "Wool Lou" without having any facial hair on the night of the murder.

Exh. 4 at 35:8-22; Exh. 7 [Lopez Trial Testimony (" Lopez T.T.")] at 643:4-13.

13. Admitted for the purpose of this motion.

14. Admitted for the purposes of this motion however that included in the "several others" was Hasani Blue (`nee Woodard). Exh. 8 [Hasani Woodard Affidavit dated 02/23/96] at ¶ 5; Exh. 9 [Hasani Woodard CPL 440.10 Testimony ("Woodard CPL 440")] at 8:13-9:9.

15. Admitted for the purposes of this motion.

16. Objection/Admitted.  Plaintiff objects to Defendants' citation to Kent's testimony at 420:21-421:4 which refers to the decedent Raymond Blount, not the individual with the distinctive gold chain.  Plaintiff admits otherwise for the purposes of this motion except that Kent observed this individual with a thin beard.  Exh. 2 [Frank Kent Trial Testimony ("Kent T.T.")] at 426:19-430:3.

17. Denied.  *See* ¶ 5, *supra*.

18. Admitted for the purposes of this motion.

19. Objection/Admitted.  Plaintiff objects to Defendants' citation to the trial testimony of Iyesi at 139:21-140:5 as it refers to an indication made by Lopez after the groups had moved away from the Ballroom, well after they exited.  Plaintiff admits otherwise for the purposes of this motion.

20. Admitted for the purposes of this motion.

21. Admitted for the purposes of this motion.

22. Admitted for the purposes of this motion.

23. Objection/Admitted.  Plaintiff objects to the extent the cited pages from Defs.' Exh. G, 433:1-14, are not attached to Part 1 of Defendants' Declaration. Plaintiff otherwise admits for the purposes of this motion.

24. Denied.  Velazquez did not actually see Lopez pass her.  She assumed that when she was turned around he passed her.  Exh. 1 at 274:5-14.  Velazquez never crossed 13th Street to where the shooting took place, instead hiding with Hasani Blue (`nee Woodard) on the opposite side of the street behind a van.  Id. at 275:2-277:2.

25. Denied.  Lopez testified he did not point out Blount to the man with the cane. Exh. 7 at 743:20-744:5.

26. Admitted for the purposes of this motion.

27. Denied.  The man was known to Lopez by both his given name, Luis "Lou" Munoz, and his street name, "Wool Lou."  See, ¶ 10, supra.  Kent did not see the shooting, but rather, had looked away briefly and heard a shot.  Exh. 2 at 442:24-444:9, 524:11-20.  Kent never actually saw a gun.  Id. at 443:12-14.  It's a triable issue of fact whether Kent and Lopez are testifying about the same person.

28. Admitted that this was the testimony of Mr. Iyesi.  However, Plaintiff objects to the cited testimony as unreliable.  At the time of this observation, Iyesi was observing the man out of the corner of his eye, while also observing the man's hand and the man with the cane.  Exh. 3 at 145:20-146:4.

29. Denied.  See, ¶ 9, supra.

30. Admitted for the purposes of this motion.

31. Denied.  Velazquez's observation was solely of the person's back and right side,

not face.  Exh. 1 at 283:16-18.  This observation occurred while her and Hasani Blue (`nee Woodard) were hiding behind a van.  Id. at 282:11-16.  Additionally, Velazquez was running across the street with Hasani Blue (`nee Woodard), in the opposite direction when the gunshot rang out.  She never looked back.  Id. at 290:10-291:11.

32.  Admitted for the purposes of this motion.

33.  Admitted for the purposes of this motion except that Boyce also stated the shooter had a goatee.  Exh. 11 [Boyce Trial Testimony ("Boyce T.T.")] at 934:12-23.

34.  Admitted for the purposes of this motion.

35.  Admitted for the purposes of this motion that after Blount was shot he, and those in his group, began to run.  Plaintiff objects to "the shot" as those present testified to multiple shots.

36.  Admitted for the purposes of this motion.

37.  Denied.  Velazquez never observed the shooting.  Exh. 1 at 290:10-291:11.

38.  Denied.  Velazquez never observed the shooting.  Exh. 1 at 290:10-291:11.

39.  Denied.   Velazquez never observed the shooting.  Exh. 1 at 290:10-291:11.

40.  Admitted for the purposes of this motion that Velazquez saw someone take Kent's jacket.  Plaintiff objects to that part of Defendants' statement of fact that implies that Velazquez knew the identity of the alleged shooter since she never saw the shooting.  Exh. 1 at 290:10-291:11.

41.  Admitted for the purposes of this motion.

42.  Admitted for the purposes of this motion that Detective Massanova was assigned to be the lead detective, but additional NYPD detectives were assigned the same day and

took part in the investigation.  Exh. 12 [*Wade* Hearing Transcript ("*Wade* H. T.")] at

5:19-6:12, 49:2-11; Exh. 13 Affirmation of ADA Rodriguez and Memorandum of Law in

Opposition to Defendant's Motion to Vacate Judgment dated September 22, 1994 ("ADA

Rodriguez Aff.")] at ¶ 18.

43. Admitted for the purposes of this motion except that Hasani Blue (`nee Woodard)

was also transported to the CATCH unit with others stated in Defendants' statement of

fact.  Exh. 8 at ¶¶ 27-29; Exh. 9 at 9:25-10:3.

44. Admitted for the purposes of this motion.

45. Admitted for the purposes of this motion.

46. Admitted for the purposes of this motion.

47. Denied.  The resulting collective description of the shooter and "Shorty" is

reflected in identical Photo Room Viewing Reports prepared for all the witnesses.  Exh.

14 [Photo Room Viewing Reports for Kent, Velazquez, Thompson, Iyesi, Boyce, Hall

and Darden].  A Photo Room Viewing Report was not prepared for Hasani Blue (`nee

Woodard), despite her presence.  *See*, ¶ 43, *supra*.

48. Admitted for the purposes of this motion based upon the collective description.

49. Admitted for the purposes of this motion that Det. Lentini testified to this.

However, the seven purported eyewitnesses testified they viewed the photographs all

together as a group.  Exh. 15 [Michael Thompson Affidavit dated 07/14/93] at ¶ 2; Exh.

16 [Michael Thompson Habeas Transcript ("Thompson H.T.")] at 13:17-14:11; Exh. 17

[Jamie Velazquez Affidavit dated 08/21/93] at ¶ 7; Exh. 18 [Jamie Velazquez Habeas

Transcript ("Velazquez H.T.")] at 287:1-289:15, 290:21-291:15; Exh. 19 Okpa Iyesi

6

Affidavit dated 07/23/93] at ¶ 4; Exh. 20 [Okpa Iyesi Habeas Transcript ("Iyesi H.T.")] at

132:3-135:14; Exh. 3 at 207:7-208:15; Exh. 21 [Okpa Iyesi CPL 440 Hearing Transcript

("Iyesi 440 H.T.") at 230:22-231:1; Exh. 22 [Frank Kent Affidavit dated 07/22/93] at ¶¶

2-3; Exh. 23 [Frank Kent Habeas Transcript ("Kent H.T.")] at 11:24-12:9. Plaintiff also

refers this Honorable Court to the decision of Justice Cataldo where he finds, based upon

the testimony of the detectives and the eyewitnesses, that all of the purported

eyewitnesses were in the room together when the photographs were viewed. November

9, 2009 CPL 440.10 Decision by New York Supreme Court (Cataldo, J.). Defs. Exh. YY

at ***55-56.

50. Denied. Plaintiff refers this honorable Court to the decision of Justice

Cataldo where he finds, based upon the testimony of the detectives and the eyewitnesses,

that all of the purported eyewitnesses were in the room together when the photographs

were viewed. November 9, 2009 CPL 440.10 Decision by New York Supreme Court

(Cataldo, J.). Defs. Exh. YY at ***55-56.

51. Admitted for the purposes of this motion.

52. Denied. Plaintiff objects to this statement of fact as contrary to the evidence

before the Court because individuals, in addition to Det. Lentini, were made aware of Mr.

Darden's selection. Lawrence Darden ("Truth") pulled out the photograph of "Shorty."

Exh. 24 [Lawrence Darden Habeas Transcript ("Darden H.T.")] at 371:4-6. Darden said

aloud, "Yeah, this is the guy that Raymond had a fight with that night." Exh. 25

[Lawrence Darden CPL 440.10 Hearing Transcript ("Darden 440 H.T.")] at 103:2-14.

Iyesi observed Darden's selection. Exh. 3 at 208:2-208:10. Lentini testified Darden said

aloud, "Here, Shorty." Exh. 12 at 14:4-8. *See also*, ¶ 49, *supra*.

53. Admitted for the purposes of this motion.

54. Admitted for the purposes of this motion that Det. Lentini testified to this. However, the seven purported eyewitnesses testified they viewed the photographs together as a group. Plaintiff refers this honorable Court to the decision of Justice Cataldo where he finds, based upon the testimony of the detectives and the eyewitnesses, that all of the purported eyewitnesses were in the room together when the photographs were viewed. November 9, 2009 CPL 440.10 Decision by New York Supreme Court (Cataldo, J.). Defs. Exh. YY at ***55-56. *See also*, ¶ 49, *supra*.

55. Denied. Plaintiff refers this honorable Court to the decision of Justice Cataldo where he finds, based upon the testimony of the detectives and the eyewitnesses, that all of the purported eyewitnesses were in the room together when the photographs were viewed. November 9, 2009 CPL 440.10 Decision by New York Supreme Court (Cataldo, J.). Defs. Exh. YY at ***55-56. *See also*, ¶ 49, *supra*.

56. Admitted for the purposes of this motion that Det. Lentini testified to this. However, Velazquez testified that she had accumulated two photographs and then eventually gave them both to an officer she misidentified as Detective Massanova. Exh. 18 at 288:25-289:15.

57. Admitted for the purposes of this motion.

58. Admitted for the purposes of this motion.

59. Admitted for the purposes of this motion that Det. Lentini testified to this. However, Velazquez testified that she had accumulated two photographs and then

eventually gave them both to an officer she misidentified as Detective Massanova.  *See*, ¶ 56, *supra*.

60. Denied.  Velazquez stated that when she showed the pictures to the officers she pointed out how much the individuals looked alike, not that one of those depicted was the shooter.  Exh. 18 at 289:25-290:4.  This discussion took place with her friends in the room at the time.  Id. at 290:21-291:2.

61. Admitted for the purposes of this motion that one of the two photographs pulled by Velazquez was of Fernando Bermudez.  *See*, ¶¶ 59-60, *supra*.

62. Admitted for the purposes of this motion.

63. Admitted for the purposes of this motion.

64. Admitted for the purposes of this motion.

65. Denied.  A Photo Array Report was filled out by Detective Massanova.  Exh. 26 [Detective Massanova CPL 440 Hearing Transcript ("Massanova 440 H.T.")] at 687:4-23; Exh. 27 [Photo Array Report].  In the Photo Array Report, an "X" through one of the boxes indicates that Detective Massanova did not show that Photo Array to a witness.  Exh. 26 at 721:5-7.  The Photo Array Report has an "X" through the box for Photo Array #2 as it pertains to Okpa Iyesi.  *See*, Exh. 27.  Detective Massanova stated that Okpa Iyesi was not shown Photo Array #2.  Exh. 26 at 721:8-15; Exh. 28 [Detective Massanova Habeas Transcript ("Massanova H.T.")] at 653:7-9.

66. Admitted for the purposes of this motion/Denied.

    a.      Admitted for the purposes of this motion.

    b.      Admitted that this is the testimony of Massanova.  Thompson stated he

didn't recognize anyone in the photo array.  Exh. 29 [Michael Thompson CPL

440.10 Hearing Transcript ("Thompson 440 H.T.")] at 137:16-138:8:

Thompson stated he was pressured and coerced by the police to pick out #2.

Id. at 139:7-140:18.

     c.     Admitted that this is the statement recorded in the Photo Array Report.

Hall stated he did not identify anyone in the array.  Exh. 30 [Terrence Hall

CPL 440.10 Hearing Transcript ("Hall 440 H.T.")] at 31:15-20, 32:2-24.

     d.     Plaintiff objects to the partial quotation.  The full entry from the Photo

Lineup Report states, "#2 He was there I saw it in his eyes He was there."

     e.     Admitted that this is the statement recorded in the Photo Array Report.

Kent never actually saw a gun.  Exh. 2 at 443:12-14.

Further, the Photo Array Report indicates that Jose Rodriguez identified people in Photo

Arrays #1, #2, and #3.  Exh. 27.  However, Rodriguez's DD5, filled out subsequently and

signed by Detective Massanova, indicates that Rodriguez could not identify anyone in the

photo arrays.  Exh. 55 [Defendants' Rule 26(a)(1) Initial Disclosures] at NYC 30.

    67. Admitted for the purposes of this motion, however Lopez indicated he did not

want to go for questioning and was threatened with arrest if he failed to do so.  Exh. 31

[Efrain Lopez Habeas Transcript ("Lopez H.T.")] at 443:10-14; Exh. 5 at ¶ 12.

    68. Plaintiff objects to this statement of fact as a mischaracterization of the testimony.

Massanova was not considering charging Blount, he was "looking to lock up" Lopez

when he picked him up at the time cited.  Exh. 26 at 744:7-12.

    69. Admitted for the purposes of this motion.

70. Admitted for the purposes of this motion, except that there is contradictory evidence in the record as to the manner in which Lopez was shown the photograph of Bermudez during the interrogation, prior to the videotape statement. According to Massanova, Lopez was shown Photo Array #1.  *See*, Exh. 27.  According to Lopez, he was shown a photo of Bermudez as part of a three-photo array.  Exh. 31 at 444:21-445:8.  *See also*, Exh. 5 at ¶¶ 11-18.

71. Admitted for the purposes of this motion.

72. Admitted for the purposes of this motion.  Plaintiff directs the Court's attention to a drastic change in handwriting slightly more than halfway through Lopez's first handwritten statement.  Defs.' Exh. P at 014083.

73. Admitted for the purposes of this motion.

74. Admitted for the purposes of this motion.

75. Admitted for the purposes of this motion.

76. Admitted for the purposes of this motion.

77. Admitted for the purposes of this motion, however Bermudez had a mustache on the date of his arrest.  Exh. 32 [Bermudez Arrest Photo].

78. Admitted for the purposes of this motion, however during this conversation Massanova informed ADA Rodriguez that several eyewitnesses had identified the suspect in a photographic array and a witness identified the suspect at the CATCH Unit.  Exh. 13 at ¶ 5.

79. Admitted for the purposes of this motion, however at this time ADA Rodriguez was briefed on the investigation up until that point by Detective Massanova.  Id. at ¶ 6.

80. Objection/Admitted.  Plaintiff objects as it is a compound statement of facts. Plaintiff admits that the lineup was conducted by Detective Massanova under the supervision of Sergeant Mulalley.  However, the viewers of the lineup were all together before the lineup viewing.  Exh. 26 at 731:18-24.  Detective Massanova could not be certain where the witnesses were taken after viewing the lineup as he remained in the viewing room.  Id. at 734:51-19.  Detective Massanova used all police officers for the lineup fillers.  Id. at 737:17-19.  Massanova utilized fillers that were as much as 6-7 inches different in height from Bermudez and 55 pounds lighter than Bermudez.  Id. 738:17-741:10.  Massanova acknowledged this was "quite" a difference.  Id. at 740:21-15, 741:5-10.

      a.     Admitted for the purposes of this motion.

      b.     Denied.  Velazquez stated she was told to select whoever looks similar. Specifically, she stated she was told, "Don't stand and concentrate about it, just pick him, because he's the one that did it." Exh. 18 at 292:19-24. Thompson stated that he recognized the person in position #2 from a photo he had seen at the CATCH Unit.  Exh. 16 at 15:4-19.  He stated he did not identify #2 as a shooter and told the police officer such.  Exh. 29 at 141:2-18. He stated he was forced to pick out #2.  Exh. 16 at 60:24-61:7.

81. Admitted for the purposes of this motion.

82. Admitted for the purposes of this motion that ADA Rodriguez testified to this. However, Velazquez was running across the street with Hasani Blue (`nee Woodard), in the opposite direction when a gunshot rang out.  Exh. 1 at 290:10-291:11.  Velazquez

stated she heard more than one gunshot. Exh. 33 [Velazquez DD5].  Velazquez never

observed the shooting of Blount.  Exh. 1 at 290:10-291:11.

83. Admitted for the purposes of this motion that ADA Rodriguez testified to this.

84. Admitted for the purposes of this motion, however prior to making this decision

ADA Rodriguez had also reviewed and evaluated all the evidence that had been obtained

to date, including statements of the witnesses and other police reports, during and after

the lineup procedure.  Exh. 13 at ¶ 8, 22.  Rodriguez had also been informed that

Detective Massanova of the lineup results.  Id. at ¶ 9.

85. Admitted for the purposes of this motion.

86. Admitted for the purposes of this motion.

87. Admitted for the purposes of this motion.

88. Admitted for the purposes of this motion, however Bermudez stated that the

group stopped at the BBQ restaurant right when it was going to close.  Defs.' Exh. T at

31.

89.  Plaintiff objects on FRE 402 grounds as the material cited is irrelevant.

90.  Admitted for the purposes of this motion.

91. Admitted for the purposes of this motion, however Lopez was asked by

Massanova if he recognized the street name, "Most", which he denied.  Exh. 4 at 21:1-6.

92. Admitted for the purposes of this motion, however Detective Massanova states

aloud, in front of Lopez, that he had shown the photo array to, "all the other witnesses" in

addition to Lopez.  Exh. 4 at 37:21-14.  Further, Lopez makes clear that the person he saw

at the scene "didn't have none of that hair on his face."  Id. at 37:11-14.

93. Admitted for the purposes of this motion, however, Massanova did not recall the sum and substance of the conversation he had with ADA Rodriguez in this regard. Defs.' Exh. DDD at 11:9-16.

94. Admitted for the purposes of this motion, however Massanova's feeling about Lopez's involvement and what he told police were much stronger than characterized. Massanova described Lopez as a "lying little prick" and a "piece of garbage." Exh. 26 at756:8-757:3; Exh. 34 [Partial Transcripts of Gaynor/Massanova Conversation from 03/04/92] at Pg. 5.

95. Admitted for the purposes of this motion that ADA Rodriguez decided not to charge Lopez in connection with the Blount shooting. However, this decision was made in the early morning hours of August 6th, 1991. Lopez's videotape interview was taken later than evening at approximately 7:00pm. Exh. 50 at 872:5-13, 905:5-16.

96. Admitted for the purposes of this motion. These alibi witnesses also gave two written statements. Exh. 36 [Written Statements of Santana and Macaluso]. These statements largely corroborate Fernando's account of the night, including going to the BBQ restaurant around the time of its closing. Id.

97. Admitted for the purposes of this motion that Detective Daniel Massanova signed the felony complaint under the penalties of perjury.

98. Admitted for the purposes of this motion.

99. Admitted. Plaintiff objects to the characterization of Velazquez as an eyewitness as she did not witness the shooting. See, ¶ 31, supra. Plaintiff otherwise admits for the purposes of this motion that Thompson and Velazquez did testify before the grand jury.

14

100.     Denied.  Velazquez's testimony refers to "the guy with the white t-shirt" and "the guy with the gun", no mention of Bermudez appears in the cited pages of the transcript.  *See*, Defs.' Exh. W, *generally*.  Velazquez also testified that she observed "a good five" people with guns present in addition to her observation of the shooter with a gun.  Exh. 35 [Grand Jury Testimony Transcript Omitted from Defs.' Exh. W] at 10:23-11:1.

101.     Denied.  The cited pages of Thompson's grand jury testimony were omitted from Defs.' Exh. W but subsequently provided by Defendants' counsel. Thompson's testimony refers to a man with a white shirt with a picture on it and "Gucci" chain, no mention of Bermudez appears in the cited pages of the transcript.  *See*, Exh. 35, *generally*.

102.     Admitted for the purposes of this motion.

103.     Denied.  Detective Lentini admitted that he took a collective description of the both the person who was punched in the club and the shooter.  Exh. 12 at 8:25-9:3, 32:6-14.  Lentini stated that either himself or Detective Fitzpatrick were in the room with the photo viewers at all times.  Id. 11:4-12.  Lentini had the group view the photographs in two separate groups, three initially and four when the first three finished.  Id. 16:16-25.  Lentini stated he gave instructions not once, but twice that the photo viewers were not to talk with each other during the viewing.  Id. 13:20-14:3, 19:4-10.  Finally, Lentini admitted to cutting short the viewing and failing to document the draw Terrence Hall utilized for his viewing.  Id. 42:7-10, 11:24-12:5.  Detective Massanova stated upon showing the photo array to the witnesses he instructed them to point out which one was

"responsible." Id. 53:5-24.  Detective Massanova denied showing the photo array to any

other than those he testified to.  Id. 62:11-14.  Detective Massanova admitted to using all

police officers as the other fillers for the lineup Id. 69:14-21.  Detective Massanova

admitted the witnesses were together before the viewing of the lineup.  Id. 70:4-8.  The

witnesses stated that they viewed the photographs all together as a group.  See, Exh. 15;

Exh. 16 at 13:17-14:11; See, Exh. 17; Exh. 18 at 287:1-289:15, 290:21-291:15, See, Exh.

19; Exh. 20 at 132:3-135:14; Exh. 3 at 207:8-208:15; See, Exh. 22; Exh. 23 at 11:24-

12:9.  The witnesses stated that the police were not in the room with them at all times.

Exh. 16 at 55:12-20; Exh. 18 at 288:5-17; Exh. 20 at 184:5-19; Exh. 23 at 10-13.

Hassani Blue (`nee Woodard) was present at the CATCH Unit and viewed the photo

array.  See, Exh. 8; Exh. 9 at 9:25-10:3.

104.     Admitted for the purposes of this motion.

105.     Admitted for the purposes of this motion.

106.     Admitted for the purposes of this motion that Judge Bradley ruled this

way based on his findings.  However, other Courts have made factual findings contrary to

those made by Justice Bradley.  See, Defs.' Exh. EE; Defs.' Exh. YY.

a.     Justice Bradley found that Terrance Hall, Lawrence Darden, Nikosi Boyce

were the only eyewitnesses in the viewing room at the CATCH Unit when Efrain

"Shorty" Lopez's photograph was identified.  Defs.'. Exh. K at 102:7-15.

Contrary to this finding, Justice Cataldo concluded that all the witnesses were in

the room together when the photographs were reviewed.  Defs.' Exh. YY at

***55-56.  Further, Justice Cataldo found the trial testimony of Okpa Iyesi was to

be credited over the detectives' recollection that the witnesses were in the viewing room at two different times.  Id.  Justice Cataldo found that Iyesi's testimony was corroborated by the witnesses at the CPL 440.10 hearing.  Iyesi stated he was present when "Shorty's" photo was found.  Exh. 21 at 230:3-232:8.  Darden stated everyone was present when he found "Shorty's" picture.  Exh. 25 at 103:2-21, 114, 117.

b.      Justice Bradley also found that Terrence Hall, Lawrence Darden, Nikosi Boyce were given a drawer, told to the view the drawers, and told not to discuss the contents of the drawers among themselves.  Defs.' Exh. K at 102:7-11.  However, Justice Cataldo later heard testimony from Detective Fitzpatrick where he denied that anyone had displayed any photographs during the procedure.  Defs.' Exh. YY at ***54.  Justice Cataldo did not credit Detective Fitzpatrick's testimony that the witnesses did not discuss Bermudez's photograph.  Id. at 54-55.

c.      Justice Cataldo found that further suggestiveness occurred when the display of the photo array was accompanied by a suggestive instruction from Detective Massanova: "I want you to look at the photo here in front of you and decide which one is responsible."  Defs.' Exh. YY at ***60 (citing Exh. 12 at 53:2-24).

d.      Justice Cataldo found that the witnesses were left together prior to viewing the photo array and the lineup.  Defs.' Exh. YY at ***60.

e.      Justice Cataldo found that at all of the idenfitication procedures the purported eyewitnesses, "could not see the [Mr. Bermudez's] actual size, viewing

17

either headshots or the seated lineup." Id. at 60.

While Justice Cataldo found that, "the combined effect of all of these procedures rendered their identifications at trial tainted and unreliable", he also found that the joint viewing of Mr. Bermudez's photograph at the CATCH Unit alone was sufficient to support a finding of unduly suggestive identifications.  Id. at ***60-61.

107.     Admitted for the purposes of this motion.

108.     Denied.  Velazquez, Thompson, Kent and Iyesi all stated that at varying times prior to trial they expressed doubts regarding their identification of the shooter and a reluctance to testify, up to an including, the necessity of a material witness order being issued for both Thompson and Kent.  Exh. 18 at 294:6-295:22; See, Exh. 15; Exh. 16 at 16:25-17:17; See, Exh. 22; Exh. 23 at 16:22-17:3; See, Exh. 19; Exh. 21 at 293:5-10.

109.     Admitted for the purposes of this motion.

110.     Admitted for the purposes of this motion that witnesses, Velazquez, Kent, Iyesi, and Thompson testified for the prosecution.  However, Plaintiff further reiterates the denials set forth previously.  See generally, ¶¶ 1-41, supra.

111.     Plaintiff objects on FRE 402 grounds as Defendants' statement is irrelevant.  Additionally, cited pages 648:5-10 are omitted from Defs.' Exh. Y.

112.     Denied.  Thompson testified he was not contacted by a member of the Defendant's family.  Exh. 16 at 18:8-11, 62:25-63:4.

113.     Admitted for the purpose of this motion.

114.     Denied.  See, ¶¶ 10-12 and 27, supra.  Lopez never identifies the Defendant at the trial as "Fernando" or "Fernando Bermudez."  Exh. 7 at 627:22-629:6, 630:19-631:23,

639:15-640:19, 652:4-25.

115.   Denied.   *See*, ¶¶ 7-8, 31, 37-41, *supra*.

116.   Denied. *See,* ¶¶ 16, 26-27, 30, *supra*.

117.   Denied. *See*, ¶¶ 30, 31, 115, *supra*.

118.   Denied. *See*, ¶¶ 9, 29, *supra*.  Thompson offered his testimony only after the execution of a material witness warrant, issued due to his reluctance to testify.  Exh. 16 at 69:23-70:23, 118:8-119:3.  Further, Thompson had entered into an unrecorded, unwritten, unexchanged cooperation agreement whereby he would testify in the Bermudez matter in exchange for a clearing of his open criminal cases.  *See*, Exh. 15;  Exh. 37 [Michael Thompson Affidavit dated 05/03/13].  Finally, the search of Thompson's house during the execution of the material witness warrant constituted a violation of Thompson's constitutional rights.  Defs.' Exh. YY at ***66-67.

119.   Denied.  *See*, ¶¶ 5-6, 17, 28, *supra*.

120.   Denied. *See*, ¶¶ 28-29, 118-119, *supra*.

121.   Plaintiff objects on FRE 402 grounds to the extent Defendants' statement is irrelevant.  Iyesi knew Harry Bermudez, Fernando's brother, from high school and in no way was threatened by him.  Exh. 21 at 296:3-21, 315:19-21.

122.   Admitted for the purposes of this motion.

123.   Admitted for the purposes of this motion that Bermudez denied knowing Lopez or that his nickname was Wool Lou.  Wool Lou is Luis Munoz.  Defs.' Exh. YY at ***20.  Plaintiff notes page 1337, cited by Defendants, has been omitted from Exh. Q.

124.   Admitted for the purposes of this motion. *See also*, ¶ 91, *supra*.

125.    Plaintiff objects on FRE 402 grounds to the extent Defendants' statement is irrelevant.

126.    Admitted for the purposes of this motion.

127.    Admitted for the purposes of this motion.

128.    Admitted for the purposes of this motion.

129.    Plaintiff objects on FRE 402 grounds to the extent Defendants' statement is irrelevant.  Plaintiff otherwise admits this statement of fact.

130.    Admitted for the purposes of this motion.  However, in the telephone recording, Massanova offers the following statement, "Well if it ain't for this, he was gonna go to jail for something else anyway." Exh. 34 at Pg. 6.

131.    Admitted for the purposes of this motion.   Defendants' citation references Exh. FFF which is not attached to their Declaration.

132.    Admitted for the purposes of this motion.  However, ADA Rodriguez claims to have first become aware that Wool Lou was Luis Munoz upon receipt of Bermudez's papers accompanying his 330 motion, not through Detective Massanova.  Exh. 38 [ADA Rodriguez Habeas Transcript ("Rodriguez H.T.")] at 760:19-761:16; Exh. 39 [ADA Rodriguez CPL 440 Hearing Transcript ("Rodriguez 440 H.T.")] at 604:3-15.  He further stated that upon receipt of this information he instructed Detective Massanova to investigate and check into the allegation.  Id. 606:17-23.  Yet, Detective Massanova claims he was never told by ADA Rodriguez to investigate further.  Exh. 28 at 702:2-4; Exh. 26 at 764:14-16.

133.    Admitted for the purposes of this motion.

134.    Admitted for the purposes of this motion.

135.    Denied.  Lopez claims Bermudez lives near his grandmother's building when Bermudez's address was roughly 100 blocks north of that location at 590 West 204th, Street, New York, NY.  Lopez gave the statement in order to continue the story that had been planned between him, Rodriguez and Massanova.  Exh. 5 at ¶ 26.

136.    Admitted for the purposes of this motion.  Plaintiff's first CPL 330.30 was filed by his trial attorney Barry Kenyon, Esq.  Therein, Mr. Kenyon asked for both a continuance to speak to more newly discovered witnesses and a full hearing, both of which were denied.  Exh. 40 [Affirmation of Barry Kenyon Esq. ("Kenyon CPL 330 Affirmation")].  Plaintiff's first CPL 440.10 motion was filed by Marianne DiBari and was denied on procedural grounds.  Defs.' Exh. HH.  Plaintiff's second CPL 440.10 motion was filed by Marianne DiBari and was denied without a hearing.  Exh. 41  [Judge Bradley CPL 440.10 Denial dated 03/15/95].  Plaintiff's third CPL 440.10 motion was denied without a hearing.  Defs.' Exh. RR.  Plaintiff's fourth CPL 440.10 motion was brought on ineffective assistance of counsel grounds which was denied without a hearing.  Defs.' Exh. SS.

137.   Admitted for the purposes of this motion.  However, the Affirmation of ADA Rodriguez dated September 22, 1994 states that both Massanova and Lentini informed him that the identification procedures were conducted in a fair and non-prejudicial manner, thus concealing from him procedures that were later determined to be "impermissibly suggestive and subject to irreparable misidentification" and that rendered "…identifications at trial tainted and unreliable."  Exh.13 at ¶¶ 63, 100; Defs.' Exh.EE

*26; <u>Defs.' Exh. YY</u> at \*\*\*60-61.

138.   Admitted for the purposes of this motion.

139.   Admitted for the purposes of this motion.

140.   Admitted for the purposes of this motion. However, Lopez informed Massanova of being with girls at the Marc Ballroom when Wool Lou asked him what happened after being punched.  <u>Exh. 4</u> at 46:5-49:24.   The girls who gave the affidavits were Annette Garcia, Celina Carrion, and Carmen Daniell, with Annette Garcia testifying at Bermudez's 2009 440.10 Hearing.  <u>Exh. 42</u> [Affidavit of Annette Garcia dated 03/03/92]; <u>Exh. 43</u> [Affidavit of Celina Carrion dated 03/27/92]; <u>Exh. 44</u> [Affidavit of Carmen Daniell dated 04/05/92]; <u>Exh. 45</u> [Annette Garcia CPL 440 Hearing Transcript ("Garcia 440 H.T.")].

141.   Admitted for the purposes of this motion.

142.   Admitted for the purposes of this motion.  *See* ¶ 135, *supra.*

143.   Admitted except that Plaintiff refers this Honorable Court to the text of the decision for the legal conclusions of Justice Bradley.

144.   Admitted for the purposes of this motion.

145.   Denied.  Velazquez stated that she was never pressured, threatened, or offered anything in exchange for affidavits or post-trial testimony, nor contacted by the Bermudez family.  *See*, <u>Exh. 17</u>; <u>Exh. 18</u> at 297:13-16, 300:6-9, 301:12-15, 335:2-336:3, 342:15-23.  Further, Velazquez stated that she affirmatively sought out Marianne Di Bari to explain what had truly taken place.  <u>Id.</u> 351:11-352:2.  Finally, Defendants' citation to <u>Exh. EE</u> at 28-29 makes no reference to such allegations.

146.   Denied.  *See*, ¶ 145, *supra*

147.   Denied.  *See*, ¶ 145, *supra*.

148.   Admitted for the purposes of this motion.

149.   Admitted for the purposes of this motion that the motion was denied without prejudice.

150.   Plaintiff objects on FRE 402 grounds as irrelevant and immaterial but otherwise admits that these were his findings.

151.   Admitted for the purposes of this motion.

152.   Admitted for the purposes of this motion.

153.   Admitted for the purposes of this motion.  Plaintiff objects to the usage of "procured" to the extent that all affiants swore they were under no pressure to give the affidavits to Di Bari and Gaynor.

154.   Admitted for the purposes of this motion, however Velazquez subsequently testified to the pressure and coercion of Massanova in her Habeas testimony. *See generally*, Exh. 18.

155.   Admitted for the purposes of this motion, however Lopez has corroborated this sworn statement in both his subsequent Habeas testimony and Affidavits. Exh. 31 at 444:18-446:16; *See generally*, Exh. 5.

156.   Denied.  *See,* ¶ 10-11, *supra*.

157.   Admitted for the purposes of this motion, however Frank Kent's true last name is Marchany.  Exh. 23 at 16:2-7.  He revealed this to ADA Rodriguez prior to his testimony and revealed a prior criminal history. Id. at 16:8-21.  The "some strong persuasion" done

by ADA Rodriguez was the application for, and execution of, a material witness warrant for Mr. Kent.  Id. at 16:22-17:8; Exh. 46 [ADA Rodriguez Affirmation in Support of Warrant of Arrest of Frank Kent dated January 24, 1992].

158.   Admitted for the purposes of this motion to the extent Defendants' statement of fact is a recitation of the contents of the affidavit.

159.   Admitted for the purposes of this motion to the extent Defendants' statement of fact is a recitation of the contents of the affidavit.

160.   Admitted for the purposes of this motion however, Thompson has corroborated the unrecorded, unwritten cooperation agreement between himself, ADA Rodriguez, and the detectives.  See, Exh. 27 at ¶22.  Thompson's statements have been credited as truthful by Justice Cataldo and found his trial testimony to be "compelled and unreliable."  Defs. Exh YY at ***65-67.  Further, Thompson was compelled to testify only after the execution of a material witness warrant upon the application of ADA Rodriguez.  See ¶ 118, supra; Exh. 47 [Rodriguez Affirmation in Support of Warrant of Arrest of Michael Thompson dated January 23, 1992].

161.   Admitted for the purposes of this motion to the extent Defendants' statement of fact is a recitation of the contents of the affidavit.

162.   Admitted for the purposes of this motion to the extent Defendants' statement of fact is a recitation of the contents of the affidavit.

163.   Admitted for the purposes of this motion.

164.   Admitted for the purposes of this motion.  Plaintiff objects to the usage of "procured" to the extent that all affiants swore they were under no pressure to give the

affidavits to Di Bari and Gaynor.

165.    Admitted for the purposes of this motion.

166.    Admitted for the purposes of this motion. *See also*, ¶¶ 103,106, *supra*.

167.    Admitted for the purposes of this motion.

168.    Admitted for the purposes of this motion that this is Judge Bradley's decision.

169.    Admitted for the purposes of this motion that this is Judge Bradley's decision.

*See also*, ¶106, *supra*.

170.    Admitted for the purposes of this motion that this is Judge Bradley's decision,

however denied as to the factual accuracy of the decision. *See also*, ¶106, *supra*.

171.    Admitted  for the purposes of this motion, however Lopez's interview with ADA

Rodriguez and Detective Massanova took place after three written statements by Lopez,

previous questioning by Massanova and other detectives and over 24 hours of being held

in the precinct. *See*, Defs.' Exh. P; Exh. 5.

172.    Admitted except that Plaintiff refers this Honorable Court to the text of the

decision for the legal conclusions of the Appellate Division.

173.    Admitted for the purposes of this motion.

174.    Admitted for the purposes of this motion.

175.    Admitted for the purposes of this motion that this was Judge Bradley's decision,

not its factual accuracy.

176.    Admitted for the purposes of this motion that this was Judge Bradley's decision.

Denied as to its factual accuracy. *See*, ¶¶ 43, 47.

177.    Admitted for the purposes of this motion.

178.    Admitted for the purposes of this motion.  Plaintiff objects to the usage of the term "incompetence" as it appears nowhere in the record cited.

179.    Admitted for the purposes of this motion.

180.    Admitted for the purposes of this motion.

181.    Admitted for the purposes of this motion, however Bermudez also alleged his Fifth, Sixth and Fourteenth Amendment rights were violated by the prosecution's failure to disclose to him, completely and timely, exculpatory evidence and documents, the misconduct engaged in by the prosecutor, and the flawed instructions given to the jurors by the trial court.  Bermudez also alleges that his Sixth and Fourteenth Amendment rights to a public trial were violated as well as by the ineffective assistance of counsel he received from his trial and appellate counsel.

182.    Denied.  Magistrate Judge Nathaniel Fox's determination to hold a hearing was motivated by Petitioner's claim that he is innocent of the crime for which he was convicted and that his convicted rested upon witness perjury, as demonstrated through the post-trial recantations that have been made by the identification witnesses who testified for the prosecution at trial.  Defs.', Exh. EE at *46.  Additionally, the Court was mindful that no hearing had ever been held in the state courts to examine the reliability of the recantations.  Id.  In addition to those stated in Defendant's Statement of Fact, testimony was also offered by Bermudez's trial counsel Barry Kenyon, Esq., Wilfredo "Freddy" Maldonado and Bermudez himself.

183.    Admitted for the purposes of this motion, however this account was credited, and Detective Lentini's account of the CATCH Unit procedures was discredited by

Magistrate Fox. Id. at 100-102.

184.   Denied.  Boyce stated they did discuss what had happened but does not say they

didn't discuss the photographs.  Exh. 48 [Nikosi Boyce Habeas Transcript ("Boyce

H.T.")] at 394:1-4.  In fact, Boyce stated that it was "pandemonium" in the room when

the photograph of Efrain "Shorty" Lopez was found.  Exh. 49 [Nikosi Boyce CPL 440

Transcript ("Boyce 440 H.T.")] at 77:24-78:6.  The witnesses were sharing the "books"

they were looking through.  Id. 79:16-19.

185.   Admitted for the purposes of this motion.

186.   Admitted for the purposes of this motion.  *See also*, Exh. 37.

187.   Denied.  Thompson stated he did not recall and that back then he didn't know the

difference between a grand jury and a trial.  Defs.' Exh. TT at 61:11-16.

188.   Admitted for the purposes of this motion.

189.   Admitted for the purposes of this motion.

190.   Admitted for the purposes of this motion, however Thompson also stated that he

didn't want to disappoint his mother in her finding out he had open criminal charges

which were promised to disappear if he testified.  Exh. 16 at 19:4-7; *See*, Exh. 37; *See*

*also* ¶ 118, *supra*.

191.   Admitted for the purposes of this motion.

192.   Admitted for the purposes of this motion.

193.   Denied.  Iyesi stated he was instructed to do the right thing with references to his

criminal record and the open charges associated with it.  Exh. 20 at 134:25-135:14.  Iyesi

was told that Rodriguez could make or break him.  Id.

194.    Admitted for the purposes of this motion.

195.    Admitted for the purposes of this motion, however the evidence Iyesi was told existed was that Fernando was a drug dealer and that ballistics proved Fernando was at the crime scene.  Id. at 144:9-145:9.

196.    Denied.  Kent stated that the photo "kinda looks like" the dude, not "believed him to be the man" that he saw walking with his hand behind his back.  Exh. 23 at 12:14-19. *See also*, ¶¶ 27, 30, *supra*.

197.    Admitted for the purposes of this motion, however Kent did so despite not actually witnessing the shooting.  Exh. 23 at 13:1-3, *see* ¶¶ 27, 30, *supra*.

198.    Admitted for the purposes of this motion.

199.    Admitted for the purposes of this motion.

200.    Admitted for the purposes of this motion.

201.    Admitted for the purposes of this motion, however Kent testified pursuant to a material witness warrant.  *See*, Exh. 46.

202.    Denied.  Velazquez does not state she picked the pictures "simultaneously" but rather eventually selected two pictures from the first drawer she received.  Exh. 18 at 288:25-289:15.

203.    Admitted for the purposes of this motion, however Velazquez informed the officer that the photographs referenced a cute guy who was trying to talk to her at the club.  Id.

204.    Admitted for the purposes of this motion.

205.    Admitted for the purposes of this motion.

206.    Admitted for the purposes of this motion.

207.    Denied.  The confusing nature of the questioning that elicited Defendants' cited testimony at best indicates she showed the pictures to ADA Rodriguez, not that she explained to him that the two men in the photographs looked alike.  Exh. 18 at 290:13-18.

208.    Denied.  Plaintiff objects to Defendants' attempt at presumption as to the meaning of the statements said to Velazquez when they were not present nor offered any testimony to support their presumed meaning.  Velazquez stated that Massanova told her that the Defendant was going to look different in the lineup and that she picked Bermudez because, "…they told us, whoever you see that looks similar, pick.  Don't stand there and concentrate about it, just pick him, because he's the one that did it."  Exh. 18 at 292:2-24.

209.    Admitted for the purposes of this motion, however Velazquez's first court date was the grand jury testimony.  Defs.' Exh. W.

210.    Admitted for the purposes of this motion.

211.    Admitted for the purposes of this motion.

212.    Admitted for the purposes of this motion.

213.    Admitted for the purposes of this motion to the extent the "inaccurate" part of her testimony was with regards to the person's weight.  Further, the cited section omits Velazquez's testimony regarding the facial hair on the person she saw.

214.    Admitted for the purposes of this motion.  *See also*, Exh. 5.  However, Lopez stated that none of the people depicted in the photographs were the person who asked him who punched him, nor had he seen any of the people in the photographs before in his life.  Exh. 31 at 445:1-8.  Further Massanova informed Lopez that Bermudez was depicted in

the photos and he was a known drug dealer. *See* "Exhibit E" of Exh. 5.

215.    Admitted.  Plaintiff objects to the citation of Lopez testimony at 449:6-450:7 as it ends mid-answer.  The omitted part of the answer, 450:8-13, states, "For some reason they wanted me to pick him.  They only showed me three pictures.  In the video they showed a whole different pictures.  That's not the first pictures they showed me.  They only showed me three pictures.  In the video, when I picked Bermudez out, that was not the line-up that they showed me, the original one."  Lopez has further stated because he didn't want to pick out the photo of Bermudez, "they didn't want to accept that."  As a result Lopez was threatened by the officers.  Exh. 5 at ¶¶ 14, 18

216.    Admitted.  Plaintiff objects to the citation of Lopez's testimony at 450:2-4 as it ends mid-answer.  The full question and answer citation is 449:24-450:13.

217.    Denied.  When asked to clarify as to who was "playing this pressure game" Lopez stated that it occurred in the precinct with the police officers playing good cop/bad cop for a whole day before the videotaped statement were made.  Exh. 31 at 453:13-21; Exh. 5.

218.    Admitted for the purposes of this motion.

219.    Denied.  Lopez stated that his interaction with the lawyer, one given to him upon the application of ADA Rodriguez, was limited to the signing of the Cooperation Agreement and avoiding self-incrimination during his trial testimony.  Exh. 31 at 512:23-513:9.

220.    Admitted for the purposes of this motion.

221.    Admitted except that Plaintiff refers this Honorable Court to the text of the

decision for the legal conclusions of Magistrate Fox's decision.

222.    Admitted for the purposes of this motion.  However, that "one issue" deemed the CATCH Unit exercise "impermissibly suggestive and conducive to irreparable misidentification."  Defs.' Exh EE at *102.

223.    Denied.  As Magistrate Fox's findings took place prior to the acknowledgment by the People that Luis Munoz is in fact "Wool Lou," it was proper under federal law. Nonetheless, unduly suggestive identification cannot be cured by independent source under the New York State Constitution.  Defs.' Exh. YY ***45-48.

224.    Admitted for the purposes of this motion to the extent Defendants' statement of fact is a recitation of Magistrate Fox's finding.  However, Magistrate Fox's findings took place prior to the acknowledgment by the People that Luis Munoz is in fact "Wool Lou." Defs.' Exh. YY at ***20, ***25.

225.    Admitted for the purposes of this motion.

226.    Admitted for the purposes of this motion to the extent Defendants' statement of fact is a recitation of Judge Preska's Decision.  Judge Preska's Decision took place prior to the acknowledgment by the People that Luis Munoz is in fact "Wool Lou." Defs.' Exh. YY at ***20, ***25.

227.    Admitted for the purposes of this motion to the extent Defendants' statement of fact is a recitation of Judge Preska's Decision.

228.    Admitted for the purposes of this motion.

229.    Admitted for the purposes of this motion.

230.    Admitted for the purposes of this motion.

231.    Admitted for the purposes of this motion.  This was the first state court post-trial motion that was granted a hearing.

232.    Admitted for the purposes of this proceeding, however the DA's Office concession came after a multi-state investigation, involving the law enforcement of those states, in which Munoz was located, admitted to being "Wool Lou" and he offered an alibi for the time of the murder that was unsubstantiated.  Defs.' Exh. YY at ***20, ***25.

233.    Admitted for the purposes of this motion, however in addition to numerous exhibits, Judge Cataldo heard live testimony from Hasani Blue (`nee Woodard), Terrence Hall, Nikosi Boyce, Lawrence Darden, Michael Thompson, Frank Marchany (a.k.a Frank Kent), Paul Iyesi (a.k.a Okpa Iyesi), Wilfredo Maldonado, Michael Gaynor, Annette Garcia, Detective Michael Lentit, Judge John Bradley, Detective William Fitzpatrick, ADA James Rodriguez, Detective Daniel Massanova, and Professor Jennifer Dysart.

234.    Admitted for the purposes of this motion.

235.    Admitted for the purposes of this motion.

236.    Admitted for the purposes of this motion, however since Justice Cataldo cites to both the videotaped interview with Lopez (where Massanova was present) and the conversations Gaynor had with Massanova regarding Luis Munoz for his contention that ADA Rodriguez knew or should have known that Lopez gave materially false testimony at trial, it is axiomatic that Massanova knew the same.  Defs.' Exh. YY ***39, ***44.

237.    Admitted for the purposes of this motion, except that these findings constitute a violation of Plaintiff's constitutional rights under New York State law.  Defs.' Exh. YY at

***34.

238.    Admitted for the purposes of this motion.

239.    Admitted for the purposes of this motion, however Plaintiff had spent eighteen years, three months, and fourteen days in prison at the time of his release.

240.    Admitted for the purposes of this motion.

241.    Admitted for the purposes of this motion.

242.    Admitted for the purposes of this motion.

243.    Admitted for the purposes of this motion.

244.    Admitted for the purposes of this motion.

245.    Admitted for the purposes of this motion.

246.    Admitted for the purposes of this motion.

**PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS PURSUANT TO
LOCAL RULE 56.1**

247.    Mr. Lopez testified at trial against Mr. Bermudez pursuant to a cooperation

agreement which provided he would not be charged with any crime relating to the

homicide.  Mr. Lopez was the only witness who testified to a relationship with the

shooter prior to the night of the murder.  Exh. 7 at 694:1-25.

248.    Mr. Lopez knew the shooter ("Wool Lou") for two years at the time of the

murder.  Exh. 7 at 632:22-633:12.  On cross-examination, Lopez conceded that the

shooter was more than an acquaintance, that he was well known to him and was in fact

his friend.  Exh. 7 at 1234:6-11.

249.    Mr. Lopez testified at trial that the only person he called from the Marc Ballroom

was his grandmother.  Exh. 7 at 638:12-17.  However, in his videotaped statement, Lopez

began to discuss a second phone call but stopped short and went back to discussing his

grandmother.  About a half hour after his use of the telephone, he saw the shooter for the

first time in the club.  Exh. 4 at 13:10-25.

250.    The pay phone records from that evening were never subpoenaed by the police.

Exh. 50 [Detective Massanova Trial Transcript] at 883.

251.    On November 9, 2009, the New York Supreme Court (Cataldo, J.) conducted an

evidentiary hearing on defendants' CPL 440.10 motion.  Defs.' Exh. YY, *generally*.

252.    No forensic evidence of any kind has ever linked Mr. Bermudez to the Blount

shooting.  Defs.' Exh. YY at ***30.

34

253.    After making various findings of fact, the Court found "by clear and convincing evidence, that the defendant has demonstrated his actual innocence."  Pursuant to this finding, the Court vacated Mr. Bermudez's conviction and dismissed his indictment with prejudice.  Defs.' Exh. YY at ***107.

254.    Pursuant to various findings of facts and conclusions of law made from a review of the *Wade* Hearing testimony, the trial transcript, and the relevant portions of the Habeas Corpus Hearing and the CPL 440 Hearing, Justice Cataldo found that Detectives Lentini, Fitzpatrick, and Massanova employed "unduly suggestive identification procedures" in obtaining the identification of Fernando Bermudez for the shooting of Raymond Blount.  Defs.' Exh. YY at ***46-47.

255.    On August 4, 1991, Det. Lentini was assigned to assist in the investigation of the Blount shooting.  Exh. 12 at 5:19-6:14.

256.    On August 4, 1991, Det. Massanova was the assigned detective to the Raymond Blount investigation.  Exh. 13 at ¶ 18.

257.    Det. Lentini and his partner, Det. Fitzpatrick, assembled Paul (Okpa) Iyesi, Jaime Velazquez, Terrence Hall, Michael Thompson, Frank Kent (Marchany), Lawrence Darden ("Truth") and Nkosi Boyce at the 20th Precinct CATCH Unit.  Ex. 12 at 6:11-7:18.

258.    Once all seven of the purported eyewitnesses were assembled at the CATCH Unit, Det. Lentini obtained a collective description of both the shooter and of "Shorty" while all of the purported eyewitnesses were present in the room at the same time.  Ex. 12 at 14:4-11; 32:6-14.

259.   All seven "Picture File Search Reports" prepared for the seven different eyewitnesses contain identical descriptions of the shooter and "Shorty'. Exh. 14.

260.   Justice Cataldo also found that a joint description of the shooter was obtained from all of the eyewitnesses at the same time, and that this encouraged collaboration between the eyewitnesses. Defs.' Exh. YY at ***59-60.

261.   Justice Cataldo found that, after obtaining a collective description from all eyewitnesses at the same time, the defendants instructed the witnesses at the same time regarding the manner in which to proceed if they located a photograph.  Defs.' Exh. YY at ***56.

262.   While all of the purported eyewitnesses were in the CATCH Unit's viewing room together, they looked at each other's pictures and engaged in a joint viewing of the photographs.  Exh. 16 at 12:21-14:22, 56; Exh. 20 at 136, 154; Exh. 21 at 230-231; Exh. 25 at 103, 114, 117:2-4.

263.   During the viewing of the photographs, Detectives Lentini and Fitzpatrick were walking in and out of the room.  Exh. 25 at 113:10-12

264.   The purported eyewitnesses conversed during the identifications at the CATCH Unit.  Exh. 21 at 229:23-231:13; Exh. 51 (Detective Fitzpatrick CPL 440.10 Habeas Transcript) at 552:11-21.

265.   All seven purported eyewitnesses were present in the viewing room at the CATCH Unit when Mr. Darden found "Shorty's" picture and pulled it out.  Exh. 3 at 209:6-210:9; Exh. 21 at 229:23-231:13; Exh. 25 at 103, 114, 117.

266.    Lawrence Darden ("Truth") pulled out the photograph of "Shorty", yelled "I found Shorty", and waived the picture in the air while at least Terrence Hall and Nkosi Boyce were present in the viewing room with him. Ex. 12 at 11:14-14:8.

267.    Mr. Iyesi was also present when Mr. Darden found Lopez's photograph and pulled it out. Exh. 3 at 209:6-210:9; Exh. 21 at 229:23-231:13.

268.    All seven purported eyewitnesses were present in the viewing room at the CATCH Unit when Ms. Velazquez found the shooter's picture and pulled it out. Exh. 21 at 231:14-232:23; Exh. 25 at 103, 114, 117.

269.    Justice Cataldo found that, when Ms. Velazquez pulled Mr. Bermudez's picture because she thought he was cute, she displayed his picture to the other trial witnesses who collectively concluded that Mr. Bermudez looked like the shooter. P. 43-44. Defs.' Exh. YY at ***59-60.

270.    After considering all of the testimony from the purported eyewitnesses and the detectives regarding the descriptions and identifications conducted in the viewing room at the CATCH Unit, Justice Cataldo found "that a collective identification of [Mr. Bermudez's] photograph did occur on August 4, 1991. Defs.' Exh. YY at ***55.

271.    On August 4, 1991, after the events at the CATCH Unit, Det. Massanova prepared a photographic array containing 6 photographs, and showed it to the seven purported eyewitnesses. Exh. 13 ¶¶ 70 - 75; Exh. 12 at 48-53.

272.    Justice Cataldo found that Detective Massanova compounded this suggestiveness when he, only hours later, showed the photograph once again to Mr. Iyesi, Kent and Thompson as part of a six person photo array. Defs.' Exh. YY at ***60-61.

273.    Justice Cataldo found that further suggestiveness occurred when the display of the photo array was accompanied by a suggestive instruction from Detective Massanova: "I want you to look at the photo here in front of you and decide which one is responsible." Defs.' Exh. YY at 60 (citing Exh. 12 at 53:2-24).

274.    All seven purported eyewitnesses were left alone prior to the photo array.  Those who viewed the photo array were allowed to rejoin the group after viewing the photo array before it was viewed by others.  Exh. 21 at 232:24-234:14.

275.    During the photo array identifications, the seven purported eyewitnesses discussed their opinions as to the identity of the shooter and Mr. Lopez.  Exh. 21 at 233:12-234:14.

276.    Additionally, Justice Cataldo found that the witnesses were left together prior to viewing the photo array and the lineup. Defs.' Exh. YY at ***59.

277.    Only one day later, the witnesses observed Mr. Bermudez yet again, this time in a seated line up.  Defs.' Exh. YY at ***59-61.

278.    Additionally, Justice Cataldo found that the witnesses were left together prior to viewing the lineup. Defs.' Exh. YY at ***59.

279.    Detective Massanova informed ADA Rodriguez that the seven purported eyewitnesses witnessed the shooting.  Exh. 13 ¶ 75.

280.    Kent did not see the shooting, and in fact never actually saw a gun. Exh. 2 at 440:11-12, 442:7-444:9, 524:11-20, 443:12-14.

281.    Velazquez never observed the shooter's face.  Exh. 1 at 283:16-18. The shooting occurred while Velazquez and Hasani Woodard were hiding behind a van.  Exh. 1 at 282:11-16.  Additionally, Velazquez was running across the street with Hasani Blue ('nee

Woodard) away from the shooting when the gun shot rang out.  Exh. 1 at 290:10-291:11.

282.    Assistant District Attorney James G. Rodriguez filed a sworn statement stating

that, on August 6, 1991, Det. Massanova telephoned and informed him that Plaintiff had

been arrested "in connection with" the shooting of Mr. Blount. Exh. 13 ¶ 5.

283.    During this conversation, Det. Massanova also informed ADA Rodriguez that

several eyewitnesses had identified Mr. Bermudez in a photographic array and that "**a**

witness identified [Mr. Bermudez] at the New York City Police Department CATCH

Unit".  Exh. 13  ¶ 5.

284.    ADA Rodriguez had no prior involvement in the investigation into the death of

Raymond Blount before this telephone call on August 6, 1991. Exh. 13 ¶ 5.

285.    ADA Rodriguez did not meet or speak to the purported eyewitnesses prior to their

viewing of the lineup. Exh. 13 ¶ 7.

286.    ADA Rodriguez reviewed the statements of the purported eyewitnesses and other

police reports during and after the lineup procedure. Exh. 13 ¶ 8.

287.    ADA Rodriguez presented the case against Mr. Bermudez before a New York

County Grand Jury on August 8, 1991.  Michael Thompson and Jaime Velazquez

appeared and testified.  Exh. 13 ¶ 29.

288.    The Grand Jury voted an indictment charging Mr. Bermudez with Murder in the

Second Degree.  Exh. 13 ¶ 29.

289.    Thompson and Velazquez testified at the Grand Jury regarding their knowledge

of the events surrounding the shooting of Raymond Blount and their identification of Mr.

Bermudez in the lineup held on August 6, 1991.  Exh. 13 ¶ 30.

290.    Thompson and Velazquez did not express any doubt concerning the certainty of their recognition of Mr. Bermudez at the lineup. Exh. 13 ¶ 30.

291.    Detective Lentini informed ADA Rodriguez, before the *Wade* Hearing and in a post-trial interview, that he recorded only composite, and not a collective, descriptions given to him by the witnesses on the Picture File Search Reports.  Det. Lentini informed ADA Rodriguez that he recorded no other descriptions of any kind from the witnesses. Exh. 13 ¶¶ 64, 64.

292.    Detective Lentini informed ADA Rodriguez, before the *Wade* Hearing and in a post-trial interview, that he did not show or allow to be passed among Hall and Boyce the photograph of Lopez (aka "Shorty") selected by Darden at the CATCH Unit on August 4, 1991. Exh. 13 ¶¶ 63, 66.

293.    Detective Lentini informed ADA Rodriguez that he did not show or allow to be passed among Velazquez, Kent, Thompson, and Iyesi, the photographs of Wilmer Rodriguez and Fernando Bermudez.  Exh. 13 ¶¶ 63, 66.

294.    Det. Massanova informed ADA Rodriguez that Ephraim "Shorty" Lopez had identified Mr. Bermudez as the shooter of Blount in a photographic array on August 5, 1991. Exh. 13 ¶¶ 16, 22.

295.    Det. Massanova informed ADA Rodriguez on August 6, 1991, that he had located Lopez in the West 92nd Street area at about 7:00 p.m. on August 5, 1991, and had taken him to the Sixth Precinct that same evening.  Exh. 13 ¶ 19.

296.    Det. Massanova also informed ADA Rodriguez that he had brought Lopez to the Precinct because a witness to the shooting had identified Lopez from a photo at the

40

CATCH Unit as the man who had the argument with Blount before Blount was shot by a third man.  Exh. 13 ¶ 19.

297.    Detective Massanova took several statements from Lopez on the night of August 5, 1991.  Exh. 13 ¶ 19.

298.    Detective Massanova informed ADA Rodriguez that he had displayed to Lopez on the night of August 5, 2013, six photographs in a legal folder, including Bermudez's photograph.  Exh. 13 ¶ 20.

299.    ADA Rodriguez interviewed Det. Massanova in response to Mr. Bermudez's post-trial allegations of misconduct with regard to Ephraim Lopez.  Exh. 13 ¶ 21.

300.    Det. Massanova informed ADA Rodriguez that he did not threaten or coerce Lopez to identify Mr. Bermudez or make any promises to Lopez or representations that Lopez would receive a sentence of twenty-five years to life if he did not identify Mr. Bermudez as the shooter.  Exh. 13 ¶ 21.

301.    According to ADA Rodriguez, no additional evidence was obtained between August 4, 1991 and the completion of defendant's trial implicating Lopez in the Raymond Blount homicide.  Exh. 13 ¶ 26.

302.    The decision not to charge Lopez as an accomplice to the Blount shooting was made by ADA Rodriguez and was based on an evaluation of the evidence presented to him by Det. Massanova.  Exh. 13 ¶ 24.

303.    On March 4, 2013, prior to the closure of expert discovery, Plaintiff exchanged Joseph Pollini pursuant to FRCP 26(a)(2)(b) as an expert in the field of police policies and procedures.  Exh. 52 [Plaintiff's FRCP 26(a)(2)(b) Disclosure for Joseph Pollini].

Mr. Pollini submitted an affidavit in opposition to Defendants' motion for summary

judgment.  Exh. 53 [Affidavit of Joseph Pollini dated May 28, 2013].


Dated:        New York, New York
              May 29, 2013

                          LAW OFFICES OF MICHAEL S. LAMONSOFF
                          Attorneys for Plaintiff Fernando Bermudez
                          80 Maiden Lane
                          New York, New York 10038
                          (212) 962-1020



              By:      _____
                          Ryan J. Lawlor, Esq.

Index No.  11 Civ. 750 (LAP)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FERNANDO BERMUDEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.

Defendants.

---

## RESPONSIVE STATEMENT TO DEFENDANTS STATEMENT PURSUANT TO LOCAL RULE 56.1

---

## LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC
*Attorneys for Plaintiff Fernando Bermudez*
**80 Maiden Lane, 12th Floor**
**New York, New York 10038**
**(212) 962-1020**