UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FERNANDO BERMUDEZ,

                                Plaintiff,

              -against-

THE CITY OF NEW YORK, et al.,

                           Defendants.
------------------------------------------------------------------------X

11 Civ. 750 (LAP)

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

LAW OFFICES OF MICHAEL S. LAMONSOFF
Attorneys for Plaintiff Fernando Bermudez
80 Maiden Lane
New York, New York 10038
(212) 962-1020

By:    Ryan J. Lawlor, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STANDARD ON SUMMARY JUDGMENT ......................................................................... 4

ARGUMENT ............................................................................................................................. 5

    I.      Proximate Cause ............................................................................................. 5

    II.     Issue Preclusion ............................................................................................. 9

    III.   § 1983 and State Law Malicious Prosecution (3rd and 10th Causes of Action) ........................................................................... 11

    IV.   § 1983 Violation of Right to Fair Trial and Due Process-Falsification of Evidence and Documents (4th and 5th Causes of Action) ..................................................................... 19

    V.     § 1983 Conspiracy ....................................................................................... 22

    VI.    § 1983 Brady (7th Cause of Action) ........................................................... 26

    VII.   Qualified Immunity ..................................................................................... 27

    VIII.  State Law Negligent Infliction of Emotional Distress (11th Cause of Action) ............................................................... 27

    IX.    State Law *Respondeat Superior* (13th Cause of Action) ........................... 28

    X.     State Law Negligent Supervision Claim (14th Cause of Action) ................................................................................... 29

CONCLUSION ....................................................................................................................... 30

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGES**

Adickes v. S.H. Kress & Co.,
   398 U.S. 144, 157 (1970) ..............................................................................4

Alcantara v. The City of New York,
   646 F. Supp.2d 449 (S.D.N.Y. 2009) ..........................................................14

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242, 248 (1986) ..............................................................................4

Blake v. Race,
   487 F. Supp. 2d 187 (E.D.N.Y. 2007) .............................................18, 23, 26

Boston Firefighters Union v. Boston Police Patrolmen's Ass'n,
   468 U.S. 1206, 1211, 104 S.Ct. 3576, 82 L.Ed.2d 874 (1984)......................9

Boyd v. The City of New York,
   336 F. 3d 72 (2d Cir. 2003) .........................................................................18

Brogdon v. City of New Rochelle,
   200 F. Supp. 2d 411 (S.D.N.Y. 2002) .........................................................18

Cameron v. The City of New York,
   598 F.3d 50 (2d Cir. 2010) ....................................................................12, 14

Celotex Corp. v. Catrett,
   477 U.S. 317, (1986) .....................................................................................4

Church v. New York State Thruway Authority,
   16 A.D.3d 808 (3d Dept. 2005) ....................................................................9

Curley v. Village of Suffern,
   268 F.3d 65 (2d Cir. 2001) ..........................................................................16

Deskovic v. City of Peekskill,
   2012 WL 4435316 (S.D.N.Y. Sept.25, 2012) .............................................28

Dillon v. City of New York,
   261 A.D.2d 34 (1st Dep't 1999)...................................................................28

Espada v. Schneider,
    522 F. Supp. 2d 544 (S.D.N.Y) ............................................................ 14

Green v. Montgomery,
    219 F.3d 52 (2d Cir. 2000) .................................................................. 17

Hartline v. Gallo,
    546 F.3d 95 (2d Cir. 2008) .................................................................. 24

Higazy v. Templeton,
    505 F.3d 161 (2d Cir. 2007) ................................................................. 5

Husbands v. The City of New York,
    05 Civ. 9252 (NRB), 2007 U.S. Dist. LEXIS 61042 (S.D.N.Y.) ........................... 18

Jenkins v. City of NY,
    2013 WL 870258 (S.D.N.Y. 2013) ......................................................... 28

Johnson v. The City of New York,
    2010 WL 2292209 (2010 S.D.N.Y) ......................................................... 12

Kemp v. Lynch,
    275 A.D.2d 1024 (4th Dept. 2000) ......................................................... 12

Kinge v. State,
    79 A.D.3d 1473 (3d Dept. 2010) ........................................................... 12

Kogut v. County of Nassau,
    2009 WL 5033937 (E.D.N.Y. 2009) ......................................................... 9

L.B. v. Town of Chester,
    232 F.Supp.2d 227 (S.D.N.Y. 2002) ....................................................... 28

Little v. The City of New York,
    487 F. Supp. 2d 426 (S.D.N.Y. 2007) ..................................................... 14

Malley v. Briggs,
    475 U.S. 335, 345, 106 S.Ct. 1092, (1986) ................................................ 5

Manganiello v. City of New York,
    612 F. 3d 149 (2d Cir. 2010) .............................................................. 11

Martinez v. Simonetti,
    202 F.3d 625 (2d Cir. 2000) .............................................................. 16

McCray v. City of New York
    2007 WL 4352748 (S.D.N.Y.) ...........................................................................28

Mesa v. City of N.Y.,
    2013 WL 31002 (S.D.N.Y. Jan. 3, 2013) ........................................................28

Murphy v. Lynn,
    118 F.3d 938 (2d Cir.1997) ..............................................................................15

Newton v. City of New York,
    681 F.Supp.2d 473 (S.D.N.Y. 2010) ................................................................29

Niagara Mohawk Power Corp. v. Jones Chem., Inc.,
    315 F.3d 171 (2d Cir. 2003) ...............................................................................4

Overton v. N.Y. State Div. of Military and Naval Affairs,
    373 F.3d 83 (2d Cir. 2004) .................................................................................4

Panetta v. Crowley,
    460 F.3d 388 (2d Cir. 2006) .............................................................................16

People v. Jackson,
    154 Misc. 2d 718, 730, 593 N.Y.S.2d 410, 418
    (Sup. Court, Kings County) ( 1992) ..................................................................26

Putnam v. County of Steuban,
    61 A.D.3d 1369 (4th Dept. 2009) .....................................................................12

Rehberg v. Paulk,
    U.S. 132 S. Ct. 1497 (2012) .........................................................................8, 17

Ricciuti v. New York City Transit Auth.,
    124 F.3d 123 (2d Cir. 1997) .........................................................10, 18, 20, 27

Richards v. The City of New York,
    2003 WL 21036365 (S.D.N.Y. 2003) ..............................................................15

Rivera v. Metakes,
    216 F.3d 1073, 2000 WL 777954 (Slip Op.)(2d Cir. 2000) ...............................9

Rule v. Brine, Inc.,
    85 F.3d 1002 (2d Cir. 1996) ...............................................................................4

Sankar v. City of New York,
    No. 07 CV 4726 (RJD), 2012 WL 2923236 (E.D.N.Y. July 18, 2012) ......18, 28

Sheila C. v. Povich,
    11 A.D.3d 120 (1st Dept. 2004) ...........................................................................28

Taylor v. City of New York,
    269 F. Supp. 2d 68 (E.D.N.Y. 2003) ...................................................................13

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1999) .............................................................................5, 6

United States v. Ayres,
    9 Wall. 608, 76 U.S. 608, 19 L.Ed. 625 (1869) .................................................9

United States v. Bagley,
    473 U.S. 667, 682–683, 105 S.Ct. 3375, 3384 ................................................26

United States v. Lawson,
    736 F.2d 835 .........................................................................................................9

Walker v. The City of New York,
    974 F.2d 293 (2d Cir. 1992) ..............................................................................16

West 20th Enterprises Corp. v. City of New York,
    2010 WL 4457264 (S.D.N.Y. 2010) ....................................................................5

Wray v. City of New York,
    490 F3d 189 (2d Cir. 2007) ..................................................................................5

Zahrey v. Coffey,
    221 F.3d 352 (2d Cir. 2000) ....................................................................5, 19, 22

## PRELIMINARY STATEMENT

For a complete statement of the facts, the Court is respectfully referred to Plaintiff's Responsive Statement to Defendants' Statement Pursuant to Local Civil Rule 56.1 (Pl.'s 56.1) dated May 29, 2013.

Fernando Bermudez, an innocent man wrongfully convicted for the 1991 murder of Raymond "Dread" Blount, was incarcerated for over 18 years as a direct result of deliberate misconduct by NYPD homicide detectives at every stage of the detectives' involvement in the criminal case.

Subsequent to Mr. Bermudez's exoneration on the basis of actual innocence, this action was commenced against the individually-named officers; James Rodriguez, the Assistant District Attorney[1]; and the City of New York for various federal civil rights claims pursuant to 42 U.S.C. § 1983, and for pendant state law claims. These claims arose out of the intentional misconduct of the individually-named detectives in that they violated accepted police procedures, fabricated identifications, falsified documents, failed to disclose exculpatory information to the office of the district attorney, and failed to complete the criminal investigation into the murder of Raymond Blount. The intentional misconduct occurred as part of a deliberate effort to secure the prosecution and conviction of Fernando Bermudez for the murder, despite the fact that the detectives knew or should have known that Bermudez was innocent of the crime.

At approximately 3:00 a.m. on August 4, 1991, at or around the intersection of 13th Street and University Place in Manhattan, and after Blount had left the nearby Marc Ballroom, Blount was shot in the abdomen. Pl.'s 56.1 at ¶41. Blount died from the wound several hours later.

---

[1] On February 13, 2013, the Court granted ADA Rodriguez's motion to dismiss in its entirety on the basis that ADA Rodriguez was entitled to absolute immunity with respect to all misconduct that was alleged in Plaintiff's Amended Complaint. Defs.' Exh. EEE.

The police were initially informed by witnesses that the shooting had occurred in retaliation for a fight that Blount had been in with Efrain "Shorty" Lopez at the Marc Ballroom approximately 2-3 hours before Blount was shot. Defs.' 56.1 at ¶3.

Later that day, during the course of an improperly-conducted photo identification procedure at a NYPD CATCH Unit, witnesses identified Fernando Bermudez as someone who looked similar to someone who had been at the scene of the shooting.  Pl.'s 56.1 at ¶¶59-61.

Lopez was also identified by witnesses at the CATCH Unit as having been present in and around the Marc Ballroom prior to and during the time of the shooting of Blount.  Pl.'s 56.1 at ¶52.

The detectives in the CATCH Unit, Det. Lentini and Det. FitzPatrick, then falsely communicated to Det. Massanova, first by telephone and then in written reports, that witness Jamie Velazquez had identified Bermudez as the shooter.  Pl.'s 56.1 at ¶60.  Relying upon the information provided by Det. Lentini and Det. FitzPatrick, Det. Massanova then obtained a RAP sheet on Bermudez.  Pl.'s 56.1 at ¶89.  Det. Massanova became aware that Bermudez was facing a pending cocaine charge.  Pl.'s 56.1 at ¶89.

From that point, as the carrying detective on the case, and regardless of the guilt or innocence of Bermudez, Det. Massanova was going to make a murder case against Bermudez. Det. Massanova believed, as he would later express to an investigator hired by Bermudez's family, that "if it ain't for this [Bermudez] was gonna go to jail for something else anyway." Pl.'s 56.1 at ¶¶130.

At the 6th precinct Det. Massanova constructed a series of photo arrays, including one that contained a photograph of Bermudez. Pl.'s 56.1 at ¶¶214-217.  Massanova subsequently

showed the photo array to witnesses and improperly coerced witnesses to identify Bermudez as the shooter of Blount. Pl.'s 56.1 at ¶¶214-217.

Det. Massanova then brought Lopez from his neighborhood around 92nd Street in Harlem, to the 6th Precinct. Beginning at approximately 8:00 p.m. detectives, including Det. Massanova and Det. Mullaley, proceeded to interrogate, then coerce Lopez into identifying Bermudez.  Pl.'s 56.1 at ¶67, 70, 214, 215, 217.  Once the detectives coerced Lopez into identifying Bermudez as "Wool Lou," the police abandoned all pretense of investigating the crime and failed to conduct even the most basic investigatory steps to follow-up on the numerous leads that Lopez provided as to the true identity of "Wool Lou," or whether the alibi of Bermudez could be verified. Pltf.'s Exh. 53.  Moreover, the police failed to disclose that the identification by Lopez had been coerced, thereby misleading the prosecutor, the defense attorney, the criminal-trial justice, the petit jurors, and subsequent appellate courts.

Even if a jury doesn't fully credit Lopez's assertion that his identification of Bermudez as "Wool Lou" was coerced -- although it must be credited at the current stage -- the rest of the evidence makes clear that the detectives knew or should have known that Lopez lied when he claimed that Bermudez was "Wool Lou."  No reasonable NYPD detective could have failed to investigate the voluminous exculpatory evidence that showed that Bermudez had absolutely no link to the murder of Blount. Pltf.'s Exh. 53.  The detectives willfully failed to investigate further because they knew or strongly suspected that Lopez's information was false but wanted to use it anyway.

This Court has already held that the misconduct that Plaintiff has alleged (i.e. "instructing Lopez to obscure the name 'Wool Lou' by pronouncing it 'Woolu,' and using the threat of prosecution to force Lopez to give testimony consistent with the narrative created by Rodriguez

and the NYPD that Plaintiff was the shooter") would be "nothing short of reprehensible" if true. Defs.' Exh. BBB at 18.  Notwithstanding that ADA Rodriguez may be absolutely immune from any participation in the misconduct, Plaintiff's causes of action as against the remaining Defendants must survive[2] as there is abundant evidence in the record showing that the reprehensible conduct did occur.  But for the fabrications and deceptions of the NYPD detectives, it would have been impossible to convict Bermudez of murder.

## STANDARD ON SUMMARY JUDGMENT

As held by your Honor:

> "Pursuant to Rule 56, a party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Overton v. N.Y. State Div. of Military and Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004). The burden of demonstrating that no issue of material fact exists lies with the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).
>
> A court considering a motion for summary judgment must construe the evidence in the light most favorable to the non-moving party, drawing all inferences in that party's favor. See Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003). Rather than asking if "the evidence unmistakably favors one side or the other," a court must ask whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252. If so, the court may not grant a defendant's motion for summary judgment. Assessing the credibility of witnesses and choosing between conflicting versions of events are roles for the fact finder, not for the court on summary judgment. See Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)."

---

[2] With the qualified exception of Plaintiff's 14th Cause of Action, a state-law claim for negligent supervision, as discussed in Point X, infra.

West 20th Enterprises Corp. v. City of New York, 2010 WL 4457264 at *2 (S.D.N.Y. 2010).

## ARGUMENT

I.    **Proximate Cause**

### A. Plaintiff's Deprivation Of Liberty Was A Foreseeable Consequence of the Detectives' Intentional Misconduct

Constitutional torts are guided by common-law principles of tort and, as a result, "§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Wray v. City of New York, 490 F.3d 189, 193 (2d Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092 (1986)).

The chain of causation may be broken by the "intervening exercise of independent judgment." Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999) cert denied, 528 US 964 (1999).

However, it is well established that the chain of causation will not be broken where there is "evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." Townes, supra; see also Higazy v. Templeton, 505 F.3d 161, 177 (2d Cir. 2007) ("defendant cannot rely on the alleged existence of a superseding cause when that subsequent decision-maker has been deceived by the defendant's actions.")

Furthermore, even if an independent decision maker is not misled or coerced, the chain of causation is not automatically broken if a defendant can "reasonably foresee that his misconduct will contribute to an `independent' decision that results in a deprivation of liberty," Higazy v. Templeton, 505 F.3d at 177 citing Zahrey v. Coffey, 221 F.3d at 352 (2d Cir. 2000).

The cases that defendants rely upon, <u>Townes</u>, <u>Wray</u>, and <u>Jovanovic</u>, are all easily distinguished from the instant case.  In <u>Townes</u>, <u>Wray</u>, and <u>Jovanovic</u>, the improper police procedures and omissions at issue in those respective cases were disclosed, permitting independent decision making to sever the respective causal chains.  In this case, the improper procedures were all hidden from subsequent decision makers.

### B.  Triable Issues of Fact Exist that Detectives Deceived ADA Rodriguez and Subsequent Decision Makers

Defendants now boldly claim that "ADA Rodriguez alone dictated the trajectory of Bermudez's prosecution."  This is simply not true.

Not once during the more than 18-year prosecution of Bermudez did the detectives claim to have revealed to ADA Rodriguez, or anyone else in the prosecutor's office, that the detectives fabricated evidence, coerced witness testimony, intentionally failed to complete the murder investigation, or failed to disclose *Brady* material.  Nor has ADA Rodriguez ever claimed to have been aware of the detectives' misconduct.  On the contrary, ADA Rodriguez has consistently denied knowledge of any police misconduct; affirmatively representing that he had been told by the detectives that their police procedures had been conducted properly.[3] Pl.'s 56.1 at ¶137.

With respect to Lopez, the determination not to prosecute him was made on the morning of August 6, 1991.  Pl.'s 56.1 at ¶95 ; <u>Exh. 50</u> at 872:5-13, 905:5-16. At that time, ADA

---

[3] In support of Plaintiff's 6th Cause of Action for conspiracy, Plaintiff suggests that there is considerable circumstantial evidence to support that ADA Rodriguez was lying for years about his knowledge of, and complicity in, the fabrication of evidence and the suppression of *Brady* material.  However, such circumstantial evidence, at most, creates triable issues of fact as to when ADA Rodriguez learned of any of the detectives' misconduct. Should the Court find that there are no triable issues of fact showing the existence of a conspiracy involving the detectives and ADA Rodriguez then it would be necessary to also find, as a matter of law, that ADA Rodriguez was unaware of the police misconduct and therefore ADA Rodriguez's actions as prosecutor did not sever the causal chain.

Rodriguez had never spoken with Lopez; the two would meet for the first time that afternoon during the videotape interview. In making his decision not to prosecute Lopez, ADA Rodriguez was relying entirely upon the information that had been provided to him from the NYPD detectives, and from Det. Massanova in particular.  ADA Rodriguez never made an independent evaluation of Lopez's credibility as a witness before deciding not to prosecute Lopez.

A jury could reasonably find that, on the morning of August 6, 1991, Det. Massanova represented to ADA Rodriguez that Lopez was a credible witness who had positively identified Bermudez as the shooter. A jury could also reasonably find that, on the morning of August 6, 1991, Det. Massanova failed to disclose to ADA Rodriguez that Det. Massanova had previously fed facts to Lopez, coerced Lopez into identifying Bermudez as "Wool Lou" (and then "Woolu") and that Det. Massanova believed that Lopez was a liar.

Defendants concede that "from the start" Det. Massanova "was not satisfied that Lopez was being truthful and believed that Lopez was more involved in the Blount shooting than he admitted". (Def. Memorandum at 4).  Unfortunately for Defendants, there isn't any evidence that Det. Massanova disclosed his now-admitted doubts about Lopez's veracity to ADA Rodriguez at the time that the prosecutor was deciding whether or not to prosecute Lopez.  Nor is there any evidence that Det. Massanova disclosed that the NYPD detectives had fed facts to Lopez and coerced Lopez into identifying Bermudez.

Without Det. Massanova having disclosed the police misconduct – which was also clearly *Brady* material – it would be impossible for the prosecutor to have made an independent decision that could arguably have severed the causal chain between the police misconduct and the prosecution of Bermudez.

7

Defendants' argument that ADA Rodriguez failed to credit witness recantations is irrelevant to the proximate cause analysis. What matters is not whether ADA Rodriguez knew that witnesses had particular doubts, but whether ADA Rodriguez had specific knowledge of police misconduct including the fabrication of evidence and witness coercion. Without that knowledge, ADA Rodriguez could not have been making independent decisions.

Nor did the actions of Justice Bradley, whether before, during, or after the trial, sever the causal chain because Justice Bradley continued to be deceived as to the police misconduct. For example, at the commencement of the *Wade* Hearing, Justice Bradley stated that he would order an independent source hearing if there was evidence of taint with respect to the photo identifications. Defs.' Exh. K, Bates #9450-9451. However, relying upon the false testimony of Det. Lentini and Det. Massanova, Justice Bradley found that the identification procedure was properly conducted and the motion to suppress was denied without a further independent source hearing.[4] Defs.' Exh. K, Bates #9552. Justice Bradley's decision could not sever the causal chain because the detectives misled that court with respect to the suggestive procedures utilized by the defendants.

Additionally, the experienced detectives would have been well aware that, as long as the detectives continued to maintain that their police procedures had been performed properly, the courts would be reluctant to credit any witness recantations, particularly post-conviction.

---

[4] The liability of the defendant detectives does not directly stem from any false testimony that they made at the *Wade* hearing, for which they are immune. That immunity, however, does not extend to the pre-*Wade* false representations that Lentini, Massanova and others made to the prosecutor which were consistent with their *Wade* testimony. Just as absolute immunity does not extend to all testimony outside of the grand jury room, pre-hearing false representations made to the prosecutor should not similarly be cloaked in absolute immunity. See Rehberg v. Paulk, 132 S. Ct. 1497, n.1. The detectives' *Wade* testimony is probative as to what the detectives told ADA Rodriguez before the hearing.

Here, the full extent of tainted identification procedures, deceptions and coercive tactics that were used against Bermudez did not fully materialize until years *after* the arraignment. It was not until the People's concession to Justice Cataldo at the 440 hearing that "Wool Lou" or "Woolu" was Munoz and not Bermudez, could the full import of the fraud be comprehended. Logically, that concession gave instant credibility to the witnesses' recantations and allegations of the asserted police misconduct which this Court did not have the factual benefit of at the habeas proceeding, but which Justice Cataldo did. The factual account of who participated, and to what degree, in these gross unconstitutional wrongs, is an issue of fact for a jury to resolve.

## II.     **Issue Preclusion**

Any argument that Plaintiff is collaterally estopped from litigating any issues that may have been raised during his petition for habeas corpus is completely without merit. "'[A] vacated judgment, by definition,' cannot have any preclusive effect in subsequent litigation.' Boston Firefighters Union v. Boston Police Patrolmen's Ass'n, 468 U.S. 1206, 1211, 104 S.Ct. 3576, 82 L.Ed.2d 874 (1984); United States v. Lawson, 736 F.2d 835 (citing United States v. Ayres, 9 Wall. 608, 76 U.S. 608, 19 L.Ed. 625 (1869)). The Court's inquiry need only go this far." Kogut v. County of Nassau, 2009 WL 5033937 at *10 (E.D.N.Y. 2009).

Additionally, "[u]nder New York law, facts determined in a pretrial hearing cannot be given preclusive effect against a defendant subsequently acquitted of the charges or against whom the charges have been dismissed." Rivera v. Metakes, 216 F.3d 1073, 2000 WL 777954 at *1 (Slip Op.)(2d Cir. 2000) (citations omitted), Church v. New York State Thruway Authority, 16 A.D.3d 808, 810 (3d Dept. 2005) ("Thus, when no order or final judgment has been entered on a verdict or decision, **or when the judgment is subsequently vacated**, collateral estoppel is inapplicable.") (emphasis added).

As the judgment against Fernando Bermudez was vacated when he was found actually innocent, all prior criminal proceedings are now considered a nullity with respect to issue preclusion.

Additionally, Magistrate Fox found that "**the procedures employed by law enforcement officers at the CATCH Unit did not ensure that photographic selections would be based on the independent observations and recollections of the witnesses**. Rather, the witnesses' ability to discuss and to agree upon whether photographs selected were of participants in the shooting incident made the CATCH Unit exercise **impermissibly suggestive and conducive to irreparable misidentification**." Defs.' Exh. EE at *26 (emphasis added). The creation of this false information violated Plaintiff's constitutional right to a fair trial. See Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir.1997)

Nonetheless, this Court, adopting the recommendations of Magistrate Fox, denied Bermudez's habeas petition in its entirety, based in part upon the conclusion that Lopez's recantation was not credible. Defs.' Exh. EE, pp. 8-9.

Incredibly, the Defendants now ask this Court to rely on its prior decision, before all the facts were known, in hopes of avoiding the catastrophic consequences of a decision involving the concession of the full truth – Bermudez is *not* "Woolu." This truth is as compelling as DNA exoneration in a rape case – the recognition that the criminal defendant did not commit the crime.

Specifically, as recognized by Justice Cataldo, "the prosecution's trial theory was based upon false testimony by Efraim Lopez." Defs.' Exh. YY at ***19.  In post-conviction hearings the People claimed that Mr. Lopez's recantations were the product of coercion or pressure by the defense. Defs.' Exh. YY at ***19-20.  But, "[b]eginning in 2006, the People began their own

investigation into Luis Munoz.  In 2007, the District Attorney's investigator was able to locate

and speak to Luis Munoz for the first time." Defs.' Exh. YY at ***20.  Thereafter an Assistant

DA met with and interviewed Luis Munoz and "(t)he District Attorney now concedes that

Fernando Bermudez is not Woolu or Wool Lou.  Luis Munoz is Wool Lou." Defs.' Exh. YY at

***20.  Justice Cataldo further held "the People have affirmatively conceded **for the first time**

facts that unquestionably demonstrate Mr. Lopez gave false testimony at the defendant's trial.  I

find that the false testimony was material, substantial and pervasive." Defs.' Exh. YY at ***20.

(emphasis added)

Had the office of the District Attorney conceded the truth in 2004 to Magistrate Fox and

this Court, during the habeas proceeding, both that Lopez lied at trial and that "Bermudez is not

Woolu or Wool Lou," surely Bermudez would not have remained incarcerated for more than five

more years.

**III.     § 1983 and State Law Malicious Prosecution (3rd and 10th Causes of Action)**

Mr. Bermudez can adduce competent evidence of the four elements necessary to establish

malicious prosecution under New York State and Federal law: "(1) the initiation or continuation

of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor;

(3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation

for defendant's actions."  See Manganiello v. City of New York, 612 F. 3d 149, 161 (2d Cir.

2010) (citations omitted).  Here, there is no question that Mr. Bermudez's charges were

terminated in his favor.  Accordingly, we address elements one, three, and four.

**A. Detectives Initiated and Continued the Prosecution of Bermudez**

The Defendants incorrectly argue that the individually-named defendants cannot be held

liable for initiating and continuing the prosecution of Mr. Bermudez.  Contrary to Defendants'

assertions, the filing of an accusatory instrument constitutes the "initiation" of a criminal proceeding, and a grand jury indictment does not absolve the police of liability for malicious prosecution. Cameron v. The City of New York, 598 F.3d 50, 63 (2d Cir. 2010).

A jury may permissibly find that Det. Massanova initiated and continued the prosecution of Mr. Bermudez without probable cause because he signed and filed the felony complaint knowing that the only evidence linking Mr. Bermudez to the crime were the improperly procured identifications from Velazquez, Iyesi, Kent, Thompson, and Lopez who later testified at trial against Mr. Bermudez. Pl.'s 56.1 at ¶¶ 47, 49, 50, 52, 67-76, 80, 95, 97, 100, 106, 182, 215, 251, 295, 303; see also Exhs. U, 5, 10, 27, 33, 54, 55. Defendants' assertion that the felony complaint was "drafted" by ADA Rodriguez bears no legal significance since it was signed by Detective Massanova and based upon the evidence that was improperly procured and provided by the Defendant detectives.

Furthermore, an official may be held liable for *continuing* a malicious prosecution after probable cause has dissipated or by withholding knowledge of evidence that would refute probable cause. See Manganiello at 161 (2d Cir. 2010); See also Kinge v. State, 79 A.D.3d 1473, 1479-80 (3d Dept. 2010); Putnam v. County of Steuban, 61 A.D.3d 1369, 1371 (4th Dept. 2009; Kemp v. Lynch, 275 A.D.2d 1024, 1025-1026 (4th Dept. 2000). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Johnson v. The City of New York, 2010 WL 2292209 *6 (2010 S.D.N.Y) (citations omitted).

Detectives Massanova, Lentini, Mulalley, and Fitzpatrick initiated and continued the prosecution of Mr. Bermudez. Pl.'s 56.1 at ¶¶ 49, 50, 67-76, 80, 97, 106, 100, 182, 215, 251, 303; see also Defs.' Exh. U; Pl.'s Exhs. 10, 27, 33, 54, 55. Defendant detectives were aware of

the groundless nature of the charges before they even arrested Mr. Bermudez because they themselves employed the unduly suggestive identification procedures. Pl.'s 56.1 at ¶¶ 67-76, 95, 204, 215, 279, 283-286, 291-293, 302.  Well aware that the only evidence linking Mr. Bermudez to the crime was the questionable identifications of the young, teenage friends of the victim, based on their observations made at night and under stressful circumstances, Pl.'s 56.1 at ¶¶ 9, 24, 27, 28 31, 40, 252, the individual Defendants nonetheless improperly procured the identifications, recorded them in writing, and forwarded them to ADA Rodriguez. Id. at ¶¶ 67-76, 83, 84, 95, 215, 204, 282; Defs.' Exh. U; Pl.'s Exhs. 5, 10, 27, 33, 54, 55.  Several Courts to hear the evidence in Mr. Bermudez's underlying case have found that the identification procedures to be unduly suggestive.[5] Pl.'s 56.1 at ¶¶ 137, 254; Exh. EE at *26; Exh. YY at ***60-61.  ADA Rodriguez, by his own admission, was never informed by the Detectives that the identifications were improper.  Pl.'s 56.1 at ¶¶ 137, 215, 284, 285, 291-293.  Accordingly, unlike the prosecutors in the cases cited by the Defendants, ADA Rodriguez could not exercise independent judgment in prosecuting Plaintiff, nor could he exercise independent judgment in crediting the witness identifications over their subsequent recantations, because he never knew that Lopez's, Velazquez's, Thompson's, Iyesi's and Kent's identifications were tainted and improperly obtained in the first place. Id.

Moreover, "where the plaintiff alleges that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's

---

[5] In Taylor the Court denied Defendants' motion for summary judgment, noting that the Plaintiff's story was credited by the judge who acquitted him, and that the judge had expressed significant doubts about the officers' credibility.  The Court held that "[a]lthough these judicial findings were made in a different evidentiary context and therefore would not preclude finding against plaintiff after a weighing of the evidence, they are certainly sufficient to cast doubt upon the defendants' credibility."  Taylor v. City of New York, 269 F. Supp. 2d 68, 74 (E.D.N.Y. 2003).

initial, potentially tortuous behavior." <u>Cameron v. The City of New York</u>, 598 F.3d 50, 63 (2d

Cir. 2010).  <u>Cf.</u> <u>Alcantara v. The City of New York</u>, 646 F. Supp.2d 449,458 (S.D.N.Y. 2009)

(finding that the prosecutorial presumption was not rebutted and the Defendant officers did not

initiate the prosecution against Plaintiff because "none of the defendants filled out complaining

or corroborating affidavits, swore to any felony complaint, or forwarded any information to

prosecutors in any way").  The cases cited by the Defendants on this point are not instructive.

Defendants' reliance on <u>Little v. The City of New York</u>, 487 F. Supp. 2d 426, 440-441

(S.D.N.Y. 2007), is inapposite since the Court found no evidence pursuant to which a jury could

find that the defendant officers fabricated the identification of the criminal defendants and then

misled the prosecutor.  Defendants also cite <u>Espada v. Schneider,</u> 522 F. Supp. 2d 544, 553

(S.D.N.Y), but there the Court found that the prosecutorial presumption was rebutted where a

jury could permissibly find that the defendant officers sought the prosecution of plaintiff for

improper motives.  Unlike the cases cited by Defendants, here, multiple Courts have already

detailed the numerous procedural and constitutional violations perpetrated by individual

Defendants, <u>see</u> <u>Exh. YY</u>; Pl.'s 56.1 at ¶¶106, 137, 253, and a jury could permissibly find that

the Defendants never informed ADA Rodriguez of their improper conduct in procuring the

identifications of Plaintiff <u>Id.</u> at ¶¶ 67-76, 285 – 301, thereby negating Rodriguez's ability to

exercise independent prosecutorial judgment.

### B.  The Detectives' Intentional, Bad-Faith Acts and Deceptions Rebut any Presumption of Probable Cause

As to the <u>third element,</u> Mr. Bermudez may rebut the presumption of probable cause

created by a grand jury indictment by demonstrating "that the conduct of the police deviated so

egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard

for proper procedures or, alternatively, by presenting evidence of fraud, perjury or suppression of

evidence by the police." <u>Richards v. The City of New York</u>, 2003 WL 21036365 *14 (S.D.N.Y.

2003) (citations and internal quotation marks omitted).  The presumption of probable cause to

prosecute created by the grand jury indictment may be overcome by evidence demonstrating that

the police have not made a complete and full statement of facts to the District Attorney or

grand jury, "that they have misrepresented or falsified evidence, that they have withheld

evidence or otherwise acted in bad faith." <u>Id</u>.  "Where the question of whether an arresting

officer had probable cause is predominantly factual in nature, as where there is a dispute as to the

pertinent events, the existence vel non of probable cause is to be decided by the jury." <u>Murphy

v. Lynn</u>, 118 F.3d 938, 947 (2d Cir.1997).  "When information is received from a putative

eyewitness, probable cause exists unless the circumstances raise doubt as to the person's

veracity." <u>Gaston v. City of New York</u>, 851 F.Supp. 2d 780, 788 (S.D.N.Y. 2012) (citations and

internal quotations omitted).

      As an initial matter, there was never probable cause to even arrest Mr. Bermudez, since

the only "evidence" linking Mr. Bermudez to the crime was the improperly procured witness

identifications which were obtained by the very individuals who arrested Plaintiff. <u>See</u> Defs'.

Exh. U, <u>Pl.'s Exh. 10, 27, 33, 54, 55</u>; Pl.'s 56.1 at ¶¶ 49, 50, 67-76, 95, 106, 183, 204, 215, 251-

306.  The record demonstrates that there are significant, triable issues of fact with respect to the

existence of probable cause to prosecute Plaintiff.  Mr. Bermudez's version of events – that he

never committed the murder – was credited by Justice Cataldo, <u>Exh. YY</u>; Pl.'s 56.1 at ¶¶ 106,

251-306, who vacated Plaintiff's wrongful conviction, found that there was no probable cause to

prosecute Bermudez, and found him actually innocent of the crime.  <u>Id</u>. at ¶ 253.  Here, there was

no evidence linking Bermudez to the crime other than the tainted witness identifications which

were procured, recorded, and forwarded to ADA Rodriguez by the Defendants. See Defs'. Exh. U, Pl.'s Exh. 10, 27, 33, 54, 55; Pl.'s 56.1 at ¶¶ 49, 50, 67-76, 95, 106, 183, 204, 215, 251-306.

Certainly aware of this, the Defendants ensured that the tainted and coerced identifications would lead to Bermudez's conviction by forwarding the identification reports and witness statements to the District Attorney, and through Velazquez's and Thompson's testimony at the grand jury subsequent to their tainted identifications. Defs'. Exh. W, Pl.'s Exh. 5, 10, 33, 54, 55; Pl.'s 56.1 at ¶¶ 99-100. The Defendants, eager to solve the murder and to conceal their own misconduct, never disclosed to ADA Rodriguez that the identifications were tainted and coerced. Notably absent from the Defendants' motion is any assertion that ADA Rodriguez knew about the unduly suggestive identifications. In fact, by his own admission, ADA Rodriguez made his determination to prosecute Mr. Bermudez after a review of all of the evidence, which he believed had been properly obtained. Pl.'s Exh. 5, 54, 55; Pl.'s 56.1 at ¶¶ 70, 95, 204, 284-301.

Contrary to Defendants' assertions, the issue on this point is not whether the Defendants satisfied their *Brady* obligations. Rather, the issue here is whether the Defendants made full disclosure to ADA Rodriguez of the unduly suggestive manner in which the identifications were initially obtained, such that ADA Rodriguez was actually able to exercise independent prosecutorial judgment. Accordingly, Defendants' reliance on Walker v. The City of New York, 974 F.2d 293, 299 (2d Cir. 1992), is misplaced because the Court in that case merely examined whether the police had satisfied their *Brady* obligations.[6] While it is true that ADA Rodriguez

---

[6] Defendants' also cite Curley v. Village of Suffern, 268 F.3d 65, 69 (2d Cir. 2001), Panetta v. Crowley, 460 F.3d 388, 391 (2d Cir. 2006), Martinez v. Simonetti, 202 F.3d 625, 629 (2d Cir. 2000), but in all three cases the Court examined the existence of probable cause in the context of false arrest where the arresting officers did not improperly procure identifications and the putative victims' accusations were corroborated by the officers' own observations. Such facts

interviewed both Velazquez and Thompson, he did so with the understanding that their identifications at the CATCH Unit and at the Precinct were properly obtained. At this point in time, and at the time Velazquez and Thompson were presented to the grand jury, their identifications had already been tainted multiple times over and ADA Rodriguez, by his own admission, was not aware of this. Pl.'s 56.1 at ¶¶ 67-76, 95, 204, 284-301.

Moreover, contrary to Defendants' assertions, they are not immune from liability for hastening Velazquez and Thompson's testimony at the grand jury, and for the foreseeable consequences of their testimony at the grand jury subsequent to their tainted and improperly procured identifications. Velazquez and Thompson's testimony at the grand jury was a foreseeable consequence of their improperly procured positive witness identifications. Under Rehberg, a grand jury witness has absolute immunity from any § 1983 claim *based only on that witness' own testimony*. Rehberg, 132 S.Ct. 1497 at 1506 (2012). Accordingly, Defendants' assertions that they should not be held liable for improperly procuring and memorializing eyewitness identifications, which were later presented to the grand jury, misstates the law: The defendants are not immune from the effects of Velazquez's and Thompson's testimony at the grand jury; they would only have immunity for their own false statements to the grand jury.

Moreover, false grand jury testimony is not and need not be the sole evidence used to prove the absence of probable cause in pursuing a malicious prosecution claim. See Rehberg v. Paulk, 132 S. Ct. at 1507 n.1 ("Of course, we do not suggest that absolute immunity extends to all activity that a witness conducts outside of the grand jury room") (emphasis in original)

---

are notably absent from the instant case since the Defendants were not present at the crime scene and a jury could permissibly find that that the Defendants improperly procured the identifications. Equally misplaced is Defendants' citation to Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000) because it concerned whether collateral estoppel barred Plaintiff from rebutting the probable cause presumption for malicious prosecution, which is not the issue here.

(citations omitted); See also Sankar v. City of New York, No. 07 CV 4726 (RJD), 2012 WL 2923236 (E.D.N.Y. July 18, 2012) ("Defendants' attempt to convert grand jury testimony into an all-purpose shield from malicious prosecution liability is unpersuasive") (internal citations and quotations omitted).

### C. There is Overwhelming Evidence of Actual Malice

As to the fourth element,[7] "[a]t the summary judgment stage, the element of malice usually turns on the probable cause inquiry, since the "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." Ricciuti v. New York City Transit Auth.,124 F.3d 123,132 (2d Cir.1997). Once a Court finds an issue of material fact as to probable cause "the element of malice also becomes an issue of material fact as well." Boyd v. The City of New York, 336 F. 3d 72, 78 (2d Cir. 2003). As demonstrated above, issues of fact exist with respect to the existence of probable cause and to the credibility of Detectives Lentini, Fitzpatrick, Mulalley, and Massanova.

Additionally, Plaintiff is entitled to show malice through evidence of a willful failure to investigate on the part of the detectives. Blake v. Race, 487 F. Supp. 2d 187, 212 (E.D.N.Y. 2007) (the Plaintiff "may seek to introduce evidence regarding defendants' alleged failure to

---

[7] Defendants cite Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002), but the Court found "nothing in this record evincing even an inference of a motivation on the part of defendants to pursue Brogdon for any purpose other than to see the ends of justice served" (citations and internal quotations omitted). Contrary to Brogdon, the record in this case is replete with evidence and judicial findings of improper conduct and improper motive on the part of the Defendant detectives. Accordingly, a jury could permissibly find that the Defendants pursued Mr. Bermudez' prosecution to justify and conceal their improper conduct commenced at the outset and continued throughout the prosecution. Similarly, Defendants' reliance on Husbands v. The City of New York, 05 Civ. 9252 (NRB), 2007 U.S. Dist. LEXIS 61042, at *31 (S.D.N.Y.), is misplaced because in that case the Court found that the officers were merely following through on the prosecution of a defendant who had been lawfully arrested. Notably absent from the Defendants' argument on this point is any acknowledgment that the only "evidence" justifying Mr. Bermudez's arrest was the Defendants' improperly procured witness identifications of Velazquez, Iyesi, Kent, and Thompson.

investigate in an effort to prove, among other things, the defendants' alleged malice as it relates to the malicious prosecution claim-namely, that the alleged failure to investigate shows that the defendants knew [plaintiff's] statement was false.")

In addition to the misconduct discussed herein, there is an overwhelming amount of evidence showing that the detectives abandoned the investigation into the murder of Blount as soon as they secured the false identification by Lopez that Bermudez was "Woolu." Pl.'s Exh. 54, 55. And, as no reasonable and experienced detective would have improperly procured the identifications or ignored the leads that Lopez provided, a jury is entitled to reach the obvious conclusion that the failure to investigate was both intentional and done with "malice." Pl.'s Exh. 53. ¶¶ 19-40.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion for summary judgment on malicious prosecution.

## IV.   § 1983 Violation of Right to Fair Trial and Due Process -- Falsification of Evidence and Documents (4th and 5th Causes of Action)

To prevail on the 4th and 5th Due Process claims, Plaintiff must show that (1) there was a fabrication of evidence by a government officer acting in an investigating capacity, that (2) the fabrication was "used" to deprive the Plaintiff of liberty, and (3) the deprivation of liberty was the legally cognizable result of the fabrication. Zahrey v Coffey, 221 F.3d 342, 349 (2d Cir. 2000).

### A. Fabricated Evidence and Documents

When a police officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for

damages under 42 U.S.C. § 1983." <u>Ricciuti v. New York City Transit Auth.,</u> 124 F.3d 123, 130

(2d Cir.1997).

Oddly, that portion of Defendants Memorandum seeking summary judgment on the 4th

and 5th causes of action only addresses a single item of fabricated evidence: the statement in

Massanova's photo array report that Jose Rodriguez, the owner of the Nissan Pathfinder present

at the scene of the shooting, identified Bermudez.[8] In point of fact, Plaintiff claims[9] that there are

triable issues of fact that individually-named officers created a voluminous amount of false

evidence, including:

1. That Det. Lentini and Det. Fitzpatrick created false identifications in the CATCH Unit through impermissibly suggestive identification procedures; Pl.'s 56.1 at ¶106;

2. That Det. Massanova created false identifications at the 6th precinct through improper identification procedures associated with the photo arrays, including instructing witnesses to "pick #2"; Pl.'s 56.1 at ¶106;

3. That Det. Massanova created false identifications at the 6th precinct through improper identification procedures associated with the lineup; Pl.'s 56.1 at ¶¶80, 106.

4. That Det. Massanova and Det. Mullaley created false identifications at the 6th precinct associated with the interrogation and coercion of Lopez, including instructing Lopez to "pick #2" from a photo array and threatening Lopez with prosecution if he failed to cooperate. Pl.'s 56.1 at ¶¶106, 214-217.

---

[8] Def. Memorandum, p. 14. However, other portions of Defendants' Memorandum openly acknowledge that Plaintiff has alleged that the identifications of Bermudez by Lopez, Velasquez, and Thompson were coerced (p.5-6).
[9] Plaintiff's Amended Complaint, DE #24, should be deemed to include Justice Cataldo's Decision and Order dated November 9, 2009, which was annexed as Exhibit A, as well as statements and documents contained explicitly or implicitly referred to in Justice Cataldo's Decision and Order, and thereby incorporated by reference.  <u>Cortec Indus., Inc. v. Sum Holding L.P.,</u> 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960, 112 S.Ct. 1561, (1992) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); <u>Intl. Audiotext Network, Inc. v Am. Tel. and Tel. Co.,</u> 62 F3d 69, 72 (2d Cir. 1995).

5. That Det. Massanova created false identifications at the time of trial by using coercive and improper police procedures to force witnesses to testify. Pl.'s 56.1 at ¶¶

Additionally, the individually-named detectives created multiple false documents both to cover up their improper identifications and to further their goal of making a case against Fernando Bermudez, including:

1. A false criminal complaint, signed by Det. Massanova; Pl.'s 56.1 at ¶97;

2. Various "DD5s" and investigative reports, including:

   a) The DD5 in which Massanova falsely stated Lopez identified Bermudez from photo array. Pl.'s Exh. 55, Bates NYC 18-19;

   b) The DD5 in which Lentini intentionally omitted that Hosani Woodard was present at CATCH unit. Pl.'s 56.1 at ¶¶43, 47; Pl.'s Exh. 55, Bates NYC 18-19;

   c) The DD5 in which Lentini falsely stated that Velazquez identified NSID#6696990 [Bermudez] as the shooter. Pl.'s 56.1 at ¶¶60; Pl.'s Exh. 55, Bates NYC 15.

3. The August 5, 1991 photo array report in which Massanova falsely asserted that the witnesses were properly separated before and after the arrays were shown, and failed to disclose suggestive prompting given to witnesses.

4. The August 6, 1991 line up report, which contained various factual inaccuracies and in which Det. Massanova falsely asserted that the witnesses were properly separated before and after the lineup, failing to disclose suggestive prompting given to witnesses.

Finally, in addition to the improper identification procedures and the false documents, there were false statements provided by the individually-named officers to ADA Rodriguez to intentionally deceive the prosecutor, the courts, and the ultimate fact finders, including:

1. Det. Massanova informed ADA Rodriguez on August 6, 1991 that Velazquez, Thompson, Kent, and Iyesi had identified Fernando Bermudez as the shooter. Pl.'s Exh. 13 at ¶9. It was false information because the identifications had been conducted improperly. Pl.'s 56.1 at ¶106.

2. Det. Massanova informed ADA Rodriguez on August 6, 1991 that Lopez had positively identified Fernando Bermudez as the shooter of Blount in a photographic array. It was false information because the identification had been coerced, Massanova had fed information to Lopez including which photo to select and Massanova believed Lopez to be a liar. Pl.'s 56.1 at ¶94.

3. Det. Massanova informed ADA Rodriguez on August 6, 1991 that he had displayed six photographs to <u>Pl.'s Exh. 13 at ¶20)</u>. It was false information because Massanova had only shown 3 photographs to Lopez.

4. That Det. Lentini and Fitzpatrick informed ADA Rodriguez that the identification procedures at the CATCH Unit were performed properly.

5. That Det. Lentini informed ADA Rodriguez that Velazquez had identified Bermudez as the shooter. It was false because Velazquez never identified Bermudez as the shooter at the CATCH Unit. Rather, Velazquez collectively identified Bermudez with others in the CATCH Unit as having been present in and around the Marc Ballroom. Because Det. Lentini already knew that Velazquez never saw the shooting and had reported hearing multiple gunshots that evening, it was not possible for Lentini to have believed that Velazquez was positively identifying "the shooter" of Blount.

**B.  Use of Fabricated Evidence**

Defendants' Memorandum does not dispute that any of the above false evidence was not used against Bermudez and was not the proximate cause of Bermudez' deprivation of liberty.

For the reasons set forth more fully in Point I, accepting for the purpose of this motion that the above-identified evidence was fabricated then there is no reasonable argument to be made that the fabrications -- and the additional documents that failed to disclose the fabrications -- did not proximately cause the conviction of Bermudez. Any detective would have reasonably foreseen that the identification fabrications in this case would contribute to an "independent" decision that results in a deprivation of liberty. <u>Zahrey v Coffey</u>, 221 F.3d 342, 352 (92d Cir. 2000).  And, in fact, they did lead to a deprivation of Bermudez's liberty.

**V.      § 1983 Conspiracy (6th Cause of Action)**

**A.  Overwhelming Evidence Exists that NYPD Detectives Conspired with Non-State Actor Witnesses to Fabricate Identification Evidence**

22

To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors **or between a state actor and a private entity;**[10] (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Pangburn v Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (emphasis added).

"Conclusory allegations" are insufficient to support a § 1983 conspiracy claim. Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993). However, plaintiff has adduced specific evidence in this case, including "details of time and place," that courts require to defeat a motion for summary judgment. Id. at 100.

While courts require a measure of specificity, they also acknowledge that "conspiracies are by their very nature secretive operations" and a plaintiff will often require circumstantial evidence to prove the existence of a conspiracy. Pangburn, 200 F.3d at 72.

An actually-innocent plaintiff who alleges, with details of time and place -- that police officers deliberately ignored fundamental norms of police investigation practices and conspired with a witness to fabricate a false identification that resulted in a wrongful conviction has met his prima facie burden to defeat a summary judgment motion. Blake v. Race, 487 F. Supp. 2d 187, 218 (E.D.N.Y. 2007) ("the Court has found, drawing all reasonable inferences in favor of Blake, that Blake has put forth evidence to overcome a summary judgment motion on the issue of whether Carbone, Brew, and Saurman conspired with Race and Garner to deprive Blake of his constitutional rights by, among other things, having Garner falsely implicate Blake in the murders.")

---

[10] Defendants, citing Pangburn, improperly omit the second half of the first prong, which expressly permits a conspiracy to exist between a state actor and a private entity. Defendants' omission was presumably intended to wrongly suggest that a § 1983 conspiracy could not exist solely between one or more witnesses and the NYPD detectives.

In this case, according to Lopez, Plaintiff has alleged that Det. Massanova and Det. Mullaley met with Lopez on August 5 and August 6, 1991 and threatened and coerced him until they all agreed that Lopez would falsely identify Bermudez as "Wool Lou" -- and thus as the killer of Blount. Accordingly, a jury could reasonably find that a § 1983 conspiracy existed between the NYPD detectives and Lopez to fabricate evidence.

Plaintiff does not dispute the existence of the intracorporate conspiracy doctrine. Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008).  However, the doctrine is inapplicable to the extent that a jury could find that a § 1983 conspiracy existed between the NYPD detectives and Lopez.

### B. The Evidence Supports, and Plaintiff Should Be Entitled to Prove, that ADA Rodriguez Participated in a § 1983 Conspiracy Involving NYPD Detectives

A §1983 conspiracy may exist that involves a state actor that is immune from liability. Feerick v Sudolnik, 816 F. Supp. 879, 887-88 (S.D.N.Y. 1993) aff'd., 2 F.3d 403 (2d Cir. 1993) citing Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186 (1980). Thus, there is nothing that bars, as a matter of law, a conspiracy from existing solely between one or more NYPD detectives and ADA Rodriguez.

There is substantial circumstantial evidence that ADA Rodriguez was aware from early on in the prosecution that police misconduct tainted all of the witness identifications.[11]

---

[11] With respect to the Court's prior Order dismissing the Plaintiff's Section 1983 claims as against ADA Rodriguez, Plaintiff respectfully submits that the language finding an absence of specificity as to the conspiracy cause of action was dicta, in that it was not necessary for the Court to reach that determination, as the Court held that ADA Rodriguez was absolutely immune from liability for any conspiratorial acts.  Plaintiff submits that the remaining Defendants made a tactical decision not to move for dismissal at the same time as ADA Rodriguez, knowing full well that their current theory that "ADA Rodriguez alone dictated the trajectory of Bermudez' prosecution" would have undercut the basis for dismissing the claims as against ADA Rodriguez. Plaintiff further submits that, in the event that the Court is inclined to grant summary judgment at this stage on the conspiracy cause of action, that the Court deem it as resolved, as a matter of law, that ADA Rodriguez was unaware of any police misconduct, preventing the remaining

Nevertheless, at every step of the prosecution, ADA Rodriguez has affirmatively represented, including in sworn affirmations and hearing testimony, that the detectives informed him that the identifications were properly obtained.  Among the circumstantial evidence that supports the conclusion that ADA Rodriguez was aware of the police misconduct is the following:

- That, at the *Wade* hearing, ADA Rodriguez obstructed Bermudez' defense attorney from learning critical *Brady* and *Rosario* information, including that Lopez and "Shorty" were one and the same person; Pl.'s Exh 12.

- That ADA Rodriguez failed to correct Det. Massanova when the detective testified falsely about the details of the Lopez interrogation and the detective suppressed the material information that Lopez was "Shorty" and that Lopez had required a cooperation agreement; Pl.'s Exh 12.

- That ADA Rodriguez waited until the eve or beginning of trial to disclose the Lopez video, and then failed to provide a transcript, despite his own admission that he was in possession of a transcript;

- That during trial, ADA Rodriguez failed to correct Lopez when Lopez perjured himself, including by claiming not to know the real name of "Woolu"; and

- That after the criminal trial, when ADA Rodriguez was informed by Bermudez' criminal defense attorney that "Woolu" was a real person, Lou Munoz, ADA Rodriguez concocted a bizarre theory that Lopez lied about the shooter being "Woolu" in order to protect Bermudez; a theory that Judge Cataldo found "lacks a logical basis." Defs.' Exh. YY at \*\*\*66-67.

The evidence in the record is sufficient to permit a jury to infer that ADA Rodriguez was aware of the police misconduct that created the fabricated identifications in this case. If so, ADA Rodriguez not only failed in his duty to report and disclose the police misconduct, but affirmatively deceived Judge Bradley and then lied about his knowledge and provided false testimony in multiple post-conviction legal proceedings.

---

individually-named Defendants from claiming at the time of trial that they disclosed any improper procedures to ADA Rodriguez, in order to defend the other causes of action.

Plaintiff respectfully submits that a reasonable jury could infer that if both the NYPD detectives and ADA Rodriguez knew that the identifications were fabricated, and if both the NYPD detectives and ADA Rodriguez acted to suppress the same information from coming to light, then the acts and deceit were more likely than not made in concert and in the furtherance of the common goal of closing the investigation into the murder of Blount. And that these actions were jointly taken by the NYPD detectives and ADA Rodriguez despite their knowledge of – or in reckless disregard for – Bermudez's innocence.

**VI.    § 1983 *Brady* (7th Cause of Action)**

"[T]he police have a duty to disclose exculpatory material in their control, failure to so disclose will constitute reversible error if such evidence is material to the defense and likely to have changed the jury's verdict." People v. Jackson, 154 Misc. 2d 718, 730, 593 N.Y.S.2d 410, 418 (Sup. Ct., Kings County 1992) aff'd., 198 A.D.2d 301 (2d Dept. 1993) (citations and internal quotation marks omitted).

Exculpatory evidence is not limited to evidence which supports the defense theory at trial. Evidence which would lead to different trial strategy is also within the *Brady* rule.  Blake v. Race, 487 F. Supp. 2d 187, 214 (E.D.N.Y. 2007) citing U.S. v. Bagley, 473 U.S. 667, 682–683, 105 S.Ct. 3375, 3384.

Where there is sufficient evidence in the record for a plaintiff to survive a motion for summary judgment on a § 1983 cause of action for a violation of due process and a right to fair trial based on fabricated evidence, the *Brady* cause of action must also survive because such evidence is so clearly *Brady* material. See Blake v. Race, 487 F. Supp. 2d 187, 215 (E.D.N.Y. 2007).

A new trial is required if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" Bagley, 473 U.S. at 682). "Reasonable Probability" means a "probability sufficient to undermine confidence in the outcome" Id.

In this case, there can be no question that the information that witness identifications were fabricated was *Brady* material. Nor that the failure of the detectives to disclose that the identifications were fabricated undermined all confidence in the outcome of the trial.

## VII.    **Qualified Immunity**

Defendants are not entitled to qualified immunity as there is overwhelming evidence that the defendants fabricated false identifications and forwarded the false evidence to the prosecutor for use at trial. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) ("Qualified immunity is unavailable where, as here, the action violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise"); see also Blake v. Race, 487 F. Supp. 2d 187, 214 (E.D.N.Y. 2007) ("Blake has created a material issue of fact as to whether the defendants participated in the fabrication of evidence to establish probable cause to arrest and prosecute Blake. Under the circumstances of this case, this disputed issue of fact also precludes summary judgment on the issue of qualified immunity.")

As in Blake, Defendants cannot be entitled to summary judgment on their qualified immunity defense where there remain triable issue of fact that Defendants violated Plaintiff's clearly established constitutional rights.

## VIII.   **State Law Negligent Infliction of Emotional Distress (11th Cause of Action)**

Despite the overwhelming evidence that the wrongful conduct of the individual defendants was intentional, should a jury find that the conduct of those Defendants was actually

negligent, the cause of action for negligent infliction of emotional distress (hereinafter "NIED")
should survive.

"To establish a claim for negligent infliction of emotional distress, a plaintiff must show,
a breach of a duty owed to plaintiff which exposes him or her to an unreasonable risk of bodily
injury or death." McCray v. City of New York 2007 WL 4352748 at *28 (S.D.N.Y.) (internal
citation and quotations omitted).

A claim for NIED exists where the plaintiff fears for his own safety, Sheila C. v. Povich,
11 A.D.3d 120, 130 (1st Dept. 2004).  Clearly being imprisoned caused Plaintiff to fear for his
safety and the wrongful conduct leading to his imprisonment was extreme and outrageous, as
required to prove a cause of action for NIED.  Dillon v. City of New York, 261 A.D.2d 34 (1st
Dep't 1999).

IX.   **State Law *Respondeat Superior* (13th Cause of Action)**

Defendants have not established that the officer defendants are entitled to summary
judgment and cannot assert that conclusion in order to escape liability under *respondeat
superior*.

"Unlike cases brought under § 1983, municipalities may be liable for the common law
torts, like false arrest and malicious prosecution, committed by their employees under the
doctrine of respondeat superior." Mesa v. City of N.Y., 2013 WL 31002, at *34 (S.D.N.Y. Jan.3,
2013) (quoting L.B. v. Town of Chester, 232 F.Supp.2d 227, 239 (S.D.N.Y. 2002)).

If summary judgment is inappropriate on a state law tort, then it is inappropriate on the
related *respondeat superior* claim.  See Sankar v. City of New York, 867 F.Supp.2d 297, 313
(E.D.N.Y.2012); accord Deskovic v. City of Peekskill, 2012 WL 4435316, at *23 (S.D.N.Y.
Sept.25, 2012); Jenkins v. City of NY 2013 WL 870258 at *13 (S.D.N.Y. 2013)

28

**X.**   <u>**State Law Negligent Supervision Claim (14th Cause of Action)**</u>

Defendants concede that the individual officers were acting within the scope of their employment (Defendants Memorandum of Law, Section X, at 19). Plaintiff therefore concedes that the cause of action based on negligent supervision should be dismissed. However, should the municipal Defendant in any way dispute that any of its employees involved herein were acting within the scope of their employment, the claim for negligent supervision should not be dismissed as Plaintiff would otherwise satisfy the requirements for making out this claim.  "To state a claim for negligent supervision under New York law, a plaintiff must first demonstrate that an employee was negligent. The plaintiff must then allege "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." <u>Newton v. City of New York</u>, 681 F.Supp.2d 473, 488 (S.D.N.Y. 2010). As demonstrated already herein, there was an employment relationship, the City should have known of the practices of the individual officers, as same were widespread, and the tortuous conduct was on City premises.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion for summary judgment should be denied.

Dated:        New York, New York
              May 30, 2013

                        LAW OFFICES OF MICHAEL S. LAMONSOFF
                        *Attorneys for Plaintiff*
                        Fernando Bermudez
                        80 Maiden Lane

29

New York, New York 10038
(212) 962-1020


By:   _____
        Ryan J. Lawlor, Esq.

Index No.  11 Civ. 750 (LAP)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FERNANDO BERMUDEZ,

                           Plaintiff,

         -against-

THE CITY OF NEW YORK, ET AL.

                           Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC
*Attorneys for Plaintiff Fernando Bermudez*
**80 Maiden Lane, 12th Floor**
**New York, New York 10038**
**(212) 962-1020**